In re NAUDAIN, INC., formerly known as Brooks Shoe Manufacturing Company, Inc., et al., Debtors.

BROOKS SHOE MANUFACTURING COMPANY, INC., Plaintiff,

v.

METROPOLITAN EDISON CO., Defendant.

Bankruptcy No. 81–04333G.
Adv. No. 82–1539G.

United States Bankruptcy Court, E.D. Pennsylvania.

Sept. 9, 1983.

Kathryn Heidt, Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiff, Brooks Shoe Manufacturing Co., Inc.

Frederick L. Reigle, Ryan, Russell & McConaghy, Reading, Pa., for defendant, Metropolitan Edison Co.

Adelman Lavine Krasny Gold & Levin, Philadelphia, Pa., for the Creditors' Committee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue at bench is whether two checks paid by the debtor to the defendant are avoidable pursuant to section 547(b) of the Bankruptcy Code ("the Code"). Since all the elements necessary to constitute a preference under section 547(b) have been met and since the exceptions to the avoidance of preferential transfers contained in sections 547(c)(1) and 547(c)(2) are inapplicable in the instant case, we conclude that the two check transfers at issue can be avoided by the debtor pursuant to section 547(b) of the Code.

The facts of the instant case have been stipulated by the parties and are as follows:[1] On October 23, 1981, Brooks Shoe Manufacturing Company, Inc. ("the debtor") filed a petition for reorganization under chapter 11 of the Code. Immediately prior thereto, Metropolitan Edison Company ("Met-Ed"), a public utility company, provided electric service to the debtor pursuant to five separate general service accounts. All of the debtor's electric service accounts were billed monthly and all bills were to be paid within fifteen (15) days after the respective billing dates in order to avoid late payment charges. The transfers which are the subject of dispute in the instant proceeding represent payments made by the debtor to Met-Ed in the form of two checks, the first of which was drafted by the debtor on September 4, 1981, and honored by the debtor's bank on September 10, 1981. The second check in question was drafted by the debtor on September 16, 1981, and was subsequently honored by the debtor's bank on September 23, 1981. It is undisputed that the subject payments were made for the benefit of Met-Ed, while the debtor was insolvent and within ninety (90) days prior to the filing of the petition for reorganization by the debtor. It is also without question that the said payments enables Met-Ed to receive more than it would have received if the debtor had filed a petition under chapter 7 of the Code. On June 21, 1982, the debtor[2] filed the instant complaint against Met-Ed to avoid the aforesaid two payments made by it to Met-Ed.

Section 547(b) of the Code provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

---

1. This opinion constitutes the findings of fact and conclusions of law as required by Rule 7052 of the Rules of Bankruptcy Procedure (effective August 1, 1983).

2. Section 1107(a) of the Code grants the debtor in possession all the rights and powers of a trustee appointed in a case under chapter 11 of the Code. 11 U.S.C. § 1107(a).

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

■ Met-Ed contends initially that the subject payments cannot be avoided in accordance with section 547(b) of the Code because said payments constituted contemporaneous exchanges and not payments made on account of antecedent debts. In order to ascertain whether those payments were made on account of an antecedent debt, it must first be determined when the debt was incurred. In this regard, we note that *Collier on Bankruptcy* provides:

> The determination of when a debt is actually 'incurred' is critical. One view is that the debt is not incurred until an invoice is sent or demand for payment is made. The probably better view is that the debt is incurred whenever the debtor obtains a property interest in the consideration exchanged giving rise to the debt. Thus if goods are identified for shipment, unless the special agreement otherwise provides, the debtor has a special property interest and the debt is 'incurred'. *Certainly when a debtor uses a utility the debt is incurred at the time the resource is consumed rather than when the invoice is sent* (emphasis added).

4 Collier on Bankruptcy ¶ 547.39 at 547–121 (15th ed. 1983). In addition, the court in *In re Valley Mechanical Industries, Inc.,* 20 B.R. 350 (Bkrtcy.N.D.Ga.1982) stated:

> 'Incurred does not necessarily imply 'due'. One noted commentary on the bankruptcy laws [Collier] is of the opinion that a debt is incurred at the time that services are rendered or goods delivered and not at the time a bill is sent ... (quotation omitted). This Court believes that the opinion expressed by Collier is the proper view as to when a debt is incurred. For

example, the mere fact that a bill is never sent does not mean that an obligation has not been created, but it means only that payment is not yet due.

20 B.R. at 352–53. *See also In re Brown,* 20 B.R. 554 (Bkrtcy.S.D.N.Y.1982); *In re Ray W. Dickey & Sons, Inc.,* 11 B.R. 146 (Bkrtcy. N.D.Tex.1980).

Therefore, since the debts in the instant case were incurred each time the debtor consumed the electricity provided by Met-Ed, these debts were necessarily incurred prior to the time the debtor paid for such service. *See In re Hersman* 20 B.R. 569 (Bkrtcy.N.D.Ohio 1982). As Met-Ed has not disputed the existence of any other element necessary to constitute a preference pursuant to section 547(b), the subject payments were preferential in accordance with that section. Whether these preferences may ultimately be avoided depends, in turn, on the applicability of the exceptions to avoidance asserted by Met-Ed.

Section 547(c)(1) provides:

> (c) The trustee may not avoid under this section a transfer—
>
> (1) to the extent that such transfer was—
>
> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
>
> (B) in fact a substantially contemporaneous exchange;

11 U.S.C. § 547(c)(1)(A), (B).

Although Met-Ed contends that the sale of electricity and the payment therefor was intended to be, and in fact was, a contemporaneous exchange, the facts, and Met-Ed's own pleadings, clearly establish that the transactions in question were purely credit transactions. As stipulated to by the parties, the course of dealing between the debtor and Met-Ed reveals that the debtor consumed electricity, was billed at the end of a monthly period for such services, was given at least an additional fifteen (15) days before payment for the services was due and, in fact, never paid for said services

until after the due date. Since the dispositive inquiry in construing section 547(c)(1) is "[w]hether the parties at the outset intended the exchange to be contemporaneous," we conclude that Met-Ed's defense asserted under section 547(c)(1) must fail. 4 Collier on Bankruptcy ¶ 547.37 at 547–118 (15th ed. 1983).[3]

■ Met-Ed also contends that the payments made to it by the debtor fall within the second exception to the trustee's avoiding powers contained in section 547(c)(2) of the Code, which provides:

> (c) The trustee may not avoid under this section a transfer—
>
> *   *   *   *   *   *
>
> (2) to the extent that such transfer was—
>
> (A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;
>
> (B) made not later than 45 days after such debt was incurred;
>
> (C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>
> (D) made according to ordinary business terms;

11 U.S.C. § 547(c)(2).

Met-Ed suggests at the outset that compliance with all four subsections of section 547(c)(2) is not necessary in order to fall within the exception embodied in that section. Met-Ed states that it is "aware of no authority" which stands for the proposition that the four elements of section 547(c)(2) must be read in the conjunctive. Simply put, the relevant case law does not support that interpretation. In *Matter of Donny*, 11 B.R. 451 (Bkrtcy.W.D.Wis.1981), the court held that "the exception found in § 547(c)(2) requires all four elements, (A) through (D), to be satisfied in order to prevent avoidance of a preferential transfer of § 547(b)." *Id.* at 452. *See also In re*

*Gulf States Marine, Inc.,* 6 B.C.D. 79 (Bankr.W.D.La.1980); *In re McCormick,* 5 B.R. 726 (Bkrtcy.N.D.Ohio 1980).

■ As we have previously held in *In re Ardmore Sales Co., Inc.,* 22 B.R. 911 (Bkrtcy.E.D.Pa.1982), "[i]t is generally held that payment of a debt by check constitutes a transfer under the Code as of the date of payment rather than as of the date of delivery." citing 3 Collier on Bankruptcy ¶ 60.14 at 820 (14th ed. 1977); *Matter of Duffy,* 3 B.R. 263 (Bkrtcy.S.D.N.Y.1980). *See also In re Fabrics of Jericho,* 22 B.R. 1010 (Bkrtcy. S.D.N.Y.1982); *In re Sportsco, Inc.,* 12 B.R. 34 (Brktcy.D.Ariz.1981). The same holds true under section 547(c)(2) of the Code. *See Naudain, Inc. v. Schaad Detective Agency,* 32 B.R. 875 (Bkrtcy.E.D.Pa.1983) citing *Matter of Advance Glove Mfg. Co.,* 25 B.R. 521 (Bkrtcy.E.D.Mich., S.D. 1982). Moreover, a review of the commentaries and decisional interpretations on section 547(c)(2) leads us to conclude that a debt is "incurred" for purposes of 547(c)(2) "on the date the debtor becomes liable for it—when a resource is consumed or a service performed—, not the date that the creditor chooses to bill the debtor." *Matter of Emerald Oil Co.,* 695 F.2d 833 (5th Cir. 1983). *See* citations and accompanying text appearing on page 873 of this opinion. Therefore, we hold that both of the transfers at issue occurred on the dates the debtor's bank honored the two checks in question. Consequently, since the first check in question was honored by the debtor's bank on September 10, 1981, we conclude that that transfer occurred on said date; and, since the other check at issue was honored by the debtor's bank on September 23, 1981, we likewise hold that the second transfer occurred on that date. With respect to the first check, only $23.14 of that amount represented payment for services rendered within 45 days of the date the check was honored by the debtor's bank.

---

**3.** In its brief, Met-Ed states that "[b]usiness custom and the law regulating public utility companies mandate that a *substantial amount of time elapses between the time utility services is [sic] provided and when that service is* *paid for* (emphasis added)." *See* memorandum of defendant at 3. This averment clearly violates the requirement of § 547(c)(1)(B) that the payments in question be, in fact, substantially contemporaneous.

The remainder of said check was applied by Met-Ed for bills conveying services rendered on dates prior to the 45 days before the check was honored. Consequently, $4,257.93 of the first check can be avoided and recovered by the debtor. In regards to the second check, the entire proceeds were applied by Met-Ed to bills for services rendered on dates prior to 45 days before the check was honored.[4]

Finally, citing cases decided under the Bankruptcy Act,[5] Met-Ed argues that the subject payments can not be avoided because there was no depletion to the debtor's estate caused by the payment to Met-Ed since Met-Ed provided something in return to the estate.[6] However appropriate and persuasive these decisions may have been under the former Act, the fact remains that Congress has enacted the present Bankruptcy Code and there is no requirement in the Code that an estate be depleted or diminished in order for a preference to be avoided. Consequently, because all the elements of section 547(b) are present in the instant case and because the transfers in question do not fall within the exception to the avoidance powers enumerated in sections 547(c)(1) and 547(c)(2) we will grant the debtor's complaint to avoid the subject transfers.

---

**4.** The two checks total $8,415.79. The debtor does not seek the return of the payments of $15.93 and $7.21 applied from the first check. Because Met-Ed continued to provide electrical service to the debtor subsequent to the time the checks were paid, for which the debtor billed a total of $3,296.28, the debtor has agreed that Met-Ed is entitled to retain that amount as it is subject to the exception contained in Section 547(c)(4) and is therefore not an avoidable preference. Therefore, the amount in controversy is $5,096.37.

**5.** The Bankruptcy Act has been superceded by the Bankruptcy Code as of October 1, 1979. The Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 403, 92 Stat. 2683 (1978).

**6.** *See, e.g., National Home Products, Inc.,* 4 B.C.D. 1295 (Bankr.E.D.La.1978).