In re the **FONDA GROUP, INC.**, Debtor.

The **FONDA GROUP, INC.**, Plaintiff,

v.

**MARCUS TRAVEL**, Defendant.

**Bankruptcy No. 88–00880.**
**Adv. No. 89–0284.**

United States Bankruptcy Court, D. New Jersey.

Sept. 25, 1989.

Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime by Ira Levee, for Fonda Group, Inc.

Goodman & Lustgarten by Leonard M. Goodman, for Marcus Travel.

DANIEL J. MOORE, Bankruptcy Judge.

The matter presently before the Court is an adversary proceeding brought by the Debtor, The Fonda Group, Inc. ("Debtor") pursuant to 11 U.S.C. § 547 seeking to set aside a number of alleged preferential transfers made to Marcus Travel ("Defendant") within 90 days preceding its filing for reorganization under Chapter 11 of the Bankruptcy Code. The Defendant denies that the transfers in question were preferences and asserts that said transfers were not transfers for antecedent debts but payments made in the ordinary course of business. In the alternative, if the Court finds the transfers were preferential, the Defendant claims that the monies are not recoverable from the Defendant because Defendant was a mere conduit for the funds received.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(b)(2)(E) & (F) and the standing order of reference by the United States District Court for the District of New Jersey dated July 23, 1984. After considering the evidence presented during the trial on July 25, 1989 and the papers thereafter filed with this Court, the Court is of the opinion that the defendant received avoidable preferences. The following represents the Court's findings of fact and conclusions of law.

On February 11, 1988, the Debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Prior to the filing, the Defendant, a travel agent who had been transacting business with the Debtor for some time, received a num-

ber of checks from the Debtor. These checks were in consideration for past travel arrangements furnished to the Debtor by the Defendant. The Debtor now seeks to have these transfers set aside as preferential.

The determination as to whether a transfer is an avoidable preference is a two step process. First, the Trustee (Debtor–in–Possession) has the burden of proving the five elements of a preference. 11 U.S.C. § 547(g). *See In re Jefferson Mortgage Co.*, 25 B.R. 963 (Bankr.D.N.J.1982); *In re Philadelphia Light Supply Co.*, 33 B.R. 734 (Bankr.E.D.Pa.1983); and *In re Sbraga*, 27 B.R. 199 (Bankr.M.D.Pa.1982). Once a prima facie case of preference is established, the defendant, pursuant to 11 U.S.C. § 547(g), has the burden of proving that the transfer is excepted from the preference rule. *In re Traffic Services, Inc.*, 43 B.R. 277 (Bankr.M.D.Tenn.1984).

Section 547(b) provides:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Pursuant to § 547(b)(4)(A), all transfers by the debtor within 90 days of the filing of the petition are subject to preference scrutiny. In the case at bar, all but one transfer alleged to be a preference were made within the preference period. Because the Debtor filed the Chapter 11 petition on February 11, 1988, the date of reference is November 13, 1987. The following transfers made after November 13, 1987 [1] are subject to further preference analysis:

| Check No. | Amount | Cleared Debtor's Bank | Paid Defendant for Invoices Dated |
|---|---|---|---|
| 109875 | 4,954.00 | 12/11/87 | 10/5/87–10/8/87 |
| 111995 | 899.00 | 12/17/87 | 10/21/87 |
| 113092 | 488.00 | 1/21/88 | 10/22/87 |
| 113222 | 202.00 | 1/25/88 | 10/22/87 |
| 113155 | 609.00 | 1/25/88 | 10/22/87 |
| 113763 | 2,904.80 | 2/8/88 | 10/22/87–10/27/87 |
| 5315 | 35,979.00 | 2/11/88 | 10/27/87–1/27/88 |

---

**1.** Debtor asserts that check no. 107686 in the amount of $2,571.00 that was processed by Debtor's bank on November 16, 1987 was a preference. The practice of the creditor was to deposit funds when received and this check was deposited on November 12, 1987. This Court adopts the view that payment is made when the debtor mails the payment provided the check is deposited in a timely manner and is subsequently honored. This the Court believes to be more in accord with the rationale of the Third Circuit Court in *Montello Oil Corporation v. Marin Motor Oil, Inc.*, 740 F.2d 220 (3rd Cir.1984). The Debtor's practice of preparing and then holding checks without recording the date of mailing leaves the Court with the alternative of arbitrarily determining the mailing date or using the date of receipt (deposit). Since none of the checks involved would be affected by using a constructive date of mailing, the Court does not here engage in that exercise.

■ Pursuant to § 547(f), each of these transfers were made while the Debtor was insolvent. § 547(f) specifically provides that for the purposes of § 547, "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date ... of the petition." No evidence was submitted to rebut this presumption and thus § 547(b)(3) is satisfied.

The transfers in question also satisfy § 547(b)(5). The financial data submitted in Debtor's bankruptcy petition and schedules show total assets of $26,023,335.00 and total liabilities in the amount of $35,144,521. Without taking into consideration the significant costs that would be incurred for administration, it is obvious that general unsecured creditors would not receive full payment in a Chapter 7 liquidation. Indeed, the liquidation analysis included in the Disclosure Statement filed pursuant to 11 U.S.C. § 1125 calculates that general unsecured creditors would receive no dividend. It is clear, therefore, that these payments enabled the Defendant to receive more than they would have if the case had been one under Chapter 7, if the transfer had not been made, and if the Defendant had received payment to the extent provided by the provisions of Title 11 of the United States Code. This finding is reenforced by the fact that the confirmed plan of reorganization which was the product of extensive negotiations between the Creditor's Committee and 4–M Corporation (the Plan proponent) and overwhelmingly approved by creditors provides for a distribution of 32½% of claims over a period of five years. Based on the foregoing facts, the Court concludes the element required by § 547(b)(5) is satisfied.

■ The two remaining § 547(b) prerequisites, § 547(b)(1) and (2), have been affirmatively put in issue by the Defendant. First, the Defendant alleges that § 547(b)(2) is not satisfied because the transfers were not on account of antecedent debts. The Court concludes that there is no merit to this position. Although the term "antecedent debt" is not defined by the Code, a debt is "antecedent" when the debtor becomes legally bound to pay before the transfer is made. 4 *Collier on Bankruptcy 15th Ed.,* 547–33, citing, *Nolden v. Van Dyke Seed Co., (In re Gold Coast Seed Co.),* 751 F.2d 1118, 1119 (9th Cir.1988). The financial data submitted to the Court and summarized at page 4 of this opinion shows that each of the transfers in question were in consideration for prior travel arrangements furnished to the Debtor. In most cases the services were furnished more than 60 days prior to payment and no services were provided less than two weeks prior to payment. That the Debtor was legally bound to pay for those travel arrangements prior to the date the transfers were made is clear from the testimony of Defendant's principal. He testified that payment was due and invoices were prepared when the airline tickets were issued, but that payment terms for commercial accounts were 30 days. Therefore, the transfers were clearly on account of antecedent debts.

■ Secondly, the Defendant claims that § 547(b)(1) was not satisfied, that the transfers were not to or for the benefit of the creditor, because the Defendant was no more than a mere conduit of the funds. This is an inaccurate assessment of the transactions. As testified to by the Defendant's principal at trial, as a prerequisite to selling airline tickets, the agent must open a special bank account, separate from its operating account, to ensure expedient payment to the airlines. All payments from customers, except those paying by credit card, are to be deposited into this special account. The agent is then required to give the Airline Reporting Corporation ("ARC") the authority to withdraw funds from this account to satisfy the agent's debts to the airlines for tickets sold by the agent when the tickets are issued. The ARC is a Delaware corporation owned by the major airlines and established to simplify the transactions between the travel agents and the airlines. ARC could and did withdraw the price of the tickets, less taxes and commissions, from the special account without regard to whether the customer

had paid the agent. Due to the foregoing procedure, the Defendant found it necessary to deposit and leave its own funds in the account, in addition to the deposits representing collections for airline tickets sold. Thus, the account consisted of customer payments, funds deposited by the Defendant and commissions earned by the Defendant from prior sales, but left in the account as a cushion. This procedure guaranteed that ARC would be paid and could in turn pay the airlines regardless of whether the Defendant's customers had made their payments in a timely manner. The testimony of the Defendant's principal shows that ARC usually withdrew the funds for the tickets purchased within ten days of the issue of a ticket. Based upon the procedure followed by ARC, the payments for the tickets issued to the Debtor had been withdrawn by ARC well in advance of payment by the Debtor. Thus, the transfers in question were not, as contended by the Defendant, earmarked for ARC. In every instance, ARC had been paid for the tickets issued to the Debtor prior to the transfers from the Debtor at issue. The majority of these payments predated the Debtor's transfers by approximately two months. Essentially, the Defendant had extended the Debtor credit and then took these transfers in satisfaction of that debt and applied them to the surplus in the special account. Therefore, contrary to the Defendant's contention, the Defendant was not a mere conduit for the funds, but a direct beneficiary of the transfers. Consequently, the element required by § 547(b)(1) is satisfied.

Having established that the transfers in question were preferences, the Court then turns to determine whether any of the transfers are exceptions to the preference rule pursuant to § 547(c). § 547(c) provides in relevant part that the trustee may not avoid transfers under § 547(b):

> (2) to the extent that such transfer was—
>> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

>> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>> (C) made according to ordinary business terms;
>
> *     *     *     *     *     *
>
> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
>> (A) not secured by an otherwise unavoidable security interest, and
>> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

11 U.S.C. § 547(c).

The Defendant argues that the transfers in issue are not avoidable preferences but are merely payments made in the ordinary course of business on debts incurred by the Debtor in the ordinary course of business. Section 547(c)(2) "is intended to protect recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee". 4 *Colliers on Bankruptcy 15th Ed.*, 547–45, 1987. "Those courts testing the 'ordinariness' of transactions under Section 547(c)(2) have generally focused on the prior conduct of the parties, the common industry practice, and, particularly, whether payment resulted from any unusual action by either the debtor or creditor." 4 *Collier on Bankruptcy* 15th Ed. 547–46, 1987.

The only evidence introduced by the Defendant to show prior conduct of the parties or common industry practice is the testimony of the Defendant's principal on July 25, 1989. When explaining the mechanics of the travel agent payment process, Marcus stated that in his office, commercial accounts, such as the Debtor's, were usually paid within 30 days of the invoice date and were not considered late until that time. Looking at these transactions in a light most favorable to the Defendant, there is, with the exception of $1,492.50 worth of invoices included in the payment of $35,979.00 discussed in the following paragraphs, no payment that was

tendered in the ordinary course of business. Because of the Defendant's established procedure of depositing promptly in Defendant's bank, all of the transfers in question, except for the $1,492.50 just noted, were payments for travel arrangements furnished to the Debtor by the Defendant more than 30 days prior to payment.

In addition, there is further evidence that the certified check numbered 5315 drawn from the Peoples Trust Co. of St. Albans, Vermont in the amount of $35,979.00 dated February 11, 1988 was a transfer outside the ordinary course of business. The records filed with the Court show that all payments to the Defendant by the Debtor prior to the payment in question were by ordinary check. Unlike those prior transfers, the February 11, 1988 transfer was a certified check[2] and satisfied the entire outstanding balance due the Defendant for travel arrangements.

Based on the evidence, Debtor had never previously remitted its entire outstanding balance to the Defendant. This final payment was prepared by Fonda not on the basis of any statement received by Fonda from Marcus but rather it was based on Fonda's computer run of all open invoices, less credits, that were due Marcus. While Fonda may not have intended to make a "preference payment" to Marcus, this payment made on the eve of filing the bankruptcy petition was clearly intended to prefer Marcus. So patent is the fact that this payment was not the norm that even the $1,492.50 of invoices paid within the normal credit period cannot be considered as in the ordinary course of business because of the manner in which the invoices were paid.

For the foregoing reasons, the § 547(c)(2) exception applies to none of the seven transfers in question.

The other relevant exception to the preference rule is § 547(c)(4), which prevents the trustee from setting aside transfers which satisfy the elements of a preference to the extent that after such transfer, the creditor gives the Debtor new value. It is the opinion of the Court that the Debtor was given new value for five of the transfers in question in the form of and to the extent that additional credit was extended to the Debtor subsequent to the transfer.

The new value given for check number 109875 drawn from Peoples Trust Co., St. Albans, Vt. in amount of $4,954.00 and processed December 11, 1987 is the credit extended for the following invoices:

| Invoice Number | Date | Amount |
| --- | --- | --- |
| 49350 | 12/14/87 | 284.00 |
| 49357 | 12/14/87 | 528.00 |
| 49366 | 12/15/87 | 178.00 |
| 49367 | 12/15/87 | 238.00 |
| 49376 | 12/15/87 | 240.00 |
| 49383 | 12/16/87 | 455.00 |
| 49384 | 12/16/87 | 455.00 |
| 49410 | 12/18/87 | 244.00 |
| 49404 | 12/19/87 | 120.00 |
| 49420 | 12/21/87 | 215.00 |
| 49421 | 12/21/87 | 140.00 |
| 49422 | 12/21/87 | 160.00 |
| 49423 | 12/21/87 | 120.00 |
| 49431 | 12/21/87 | 140.00 |
| 49432 | 12/21/87 | 80.00 |
| 49458 | 12/23/87 | 174.00 |
| 49460 | 12/23/87 | 174.00 |
| 49465 | 12/24/87 | 628.00 |
| 49467 | 12/28/87 | 204.00 |
| 49468 | 12/28/87 | 624.00 |

The new value given for check number 111995 drawn from the Peoples Trust Co., St. Albans, Vt. in the amount of $899.00 and processed on December 17, 1987 is the credit extended for the following invoices:

| | | |
| --- | --- | --- |
| 49468 | 12/28/87 | 624.00 |
| 49470 | 12/28/87 | 723.00 |

The new value given for check number 113092 drawn from the Peoples Trust Co., St. Albans, Vt. in the amount of $488.00 and processed on January 4, 1988 is the credit extended for the following invoices:

| | | |
| --- | --- | --- |
| 0049529 | 1/5/88 | 120.00 |
| 0049546 | 1/6/88 | 148.00 |
| 0049556 | 1/6/88 | 155.00 |
| 0049563 | 1/7/88 | 160.00 |

The new value given for check number 113155 drawn from the Peoples Trust Co., St. Albans, Vt. in the amount of $609.00 and processed on January 25, 1988 is the credit extended for the following invoices:

---

**2.** While there was no testimony as to the certification, whether certified by the maker or payee a certified check was not the ordinary course of business.

| 0049775 | 1/26 | 523.00 |
| 0049776 | 1/26 | 322.00 |

The new value given for check number 113222 drawn from the Peoples Trust Co., St. Albans, Vt. in the amount of $202.00 and processed on January 25, 1988 is the credit extended for the following invoices:

| 004977 | 1/26/88 | $388.00. |

The remaining two transfers in issue are checks numbered 113763 drawn from the Peoples Trust Co., St. Albans, Vt. in the amount of $2,904.80 and processed on February 8, 1988, and the certified check numbered 5315 drawn from the Peoples Trust Co. of St. Albans, Vt. in the amount of $35,979.00 dated February 11, 1988. Based upon the evidence at trial, there was not any extension of credit by the Defendant to the Debtor after January 27, 1988. Therefore, no new value was extended for these transfers. Because these two transfers are preferences pursuant to § 547(b) and do not fall within any of the exceptions contained in § 547(c), the Court finds checks numbered 113763 and 5315 totalling $38,883.80 constitute avoidable preferential transfers.

Under the Bankruptcy Act, the courts developed an analysis of comparing the relative position of the creditor at the beginning and end of the preference period. Such an analysis would have resulted in a determination of a preference of $20,137 representing the difference between the amount balance of $20,680.00 at November 12, 1987 and a balance of $543.00 at February 11, 1988 as reflected on Fonda's Schedules. The $20,680.00 November 12, 1987 is reconstructed from the total of the first six checks enumerated on page 4 of the opinion plus $10,624.00 total of invoices included in the final payment and incurred prior to November 13, 1987 (over 90 day column Exhibit F2). This Court joins "the vast majority of courts and commentators [that] have ... concluded that the net result rule is an 'anachronism' that must yield to the specific Congressional pronouncement of section 547(c)(4)." *Collier on Bankruptcy*, 15th Ed. ¶ 547.12 (at p. 547–55).

## CONCLUSION

For the foregoing reasons, the Court holds in favor of the plaintiff, The Fonda Group, Inc., in the amount of $38,883.80 together with interest from July 25, 1989 at the rate provided for judgments in the United States District Courts entered on that date. The Debtor shall submit the appropriate order within ten (10) days of the date hereof.