In re JOLLY "N", INC. t/a
Woodbine Inn, Debtor.

Harry B. KELLMAN, Trustee, Plaintiff,

v.

P.S.E. & G., Defendant.

Bankruptcy No. 85–02709.
Adv. No. 88–1075.

United States Bankruptcy Court,
D. New Jersey.

Jan. 8, 1991.

Klehr, Harrison, Harvey, Branzburg & Ellers by Carol A. Slocum, Cherry Hill, N.J., for Harry B. Kellman, Trustee.

Richard A. Murray, Newark, N.J., for Public Service Elec. and Gas Co.

## OPINION

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

The matter before the Court is the Chapter 7 Trustee's "Complaint To Recover Preferential Transfer." At issue in this adversarial proceeding is the avoidability of certain payments made by the debtor, Jolly "N" Inc. ("Jolly N"), to the defendant, Public Service Gas & Electric Company ("PSE & G"). Specifically, the Trustee seeks to avoid these payments as preferential transfers under 11 U.S.C. § 547(b). The defendant utility company responds by raising several defenses under 11 U.S.C. § 547(c).

The following constitutes this Court's findings of fact and conclusions of law.

The debtor filed a voluntary Chapter 11 petition on May 22, 1985 pursuant to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984. The matter was subsequently converted to a liquidation proceeding under Chapter 7 of the Bankruptcy Code, and Harry B. Kellman was appointed Trustee of the estate of Jolly "N".

At trial the parties stipulated that the preference period commenced on February 21, 1985, that date being 90 days prior to the filing of Jolly "N"'s bankruptcy petition.

Dennis Block, supervisor of collections of PSE & G testified that between February 21, 1985 and May 22, 1985, the debtor was indebted to PSE & G for gas, electric and streetlight services supplied to the debtor's business premises in Pennsauken, New Jersey in the approximate amount of $45,000.00. Prior to the filing of the Chapter 11 petition, the debtor was in the business of operating a restaurant and bar in Pennsauken, New Jersey. (Transcript of December 21, 1989 at pp. 5–6) (hereinafter "Tr. at ____"). In describing those payments Block stated:

> They were payments on the services used during that period mostly or you could use it either way, but we knew that the Jolly N was on a—with their other creditors on a cash only basis, no services were supplied unless the cash was paid up front.

> So we knew that they couldn't get service anywhere else. They had to use our service. We didn't want to shut them off and put a lot of people out of work, so we tried to work along with them on payments.

(Tr. at 6).

Block testified in regard to payments received from the debtor during this period that PSE & G would pay the current bill first, and apply any surplus to the balance due. (Tr. at 9–10). Block further testified that current billings included the billing for the current month plus any unpaid balances due on the account. (Tr. at 18).

Block testified that on the date of the filing of the petition on May 22, 1985, Jolly "N" was indebted to PSE & G on Account No. 61–565–950–23 in the amount of $39,779.08. (Tr. at 11, P–17). Block also testified that the amount due by the debtor to PSE & G as of July 8, 1985 was $43,756.96. (Tr. at 11, P–18). PSE & G filed a proof of claim in this proceeding in the amount of $43,756.96. (Tr. at 12). (P–37).

As of February 19, 1985, Jolly "N" was indebted to PSE & G in the amount of $60,007.69 for utility services and late payment charges incurred by the debtor on two separate accounts maintained with PSE & G. (J–1). The parties' transactions during the 90 day preference period were as follows:

| Date | Billing + | Late Pmt. Charges = | Monthly Total | Payment | Previous Balance | Total |
|---|---|---|---|---|---|---|
| 2/19/85 | 11,588.06 | 317.71 | 12,687.12 | | 47,320.57 | 60,007.69 |
| | 744.25SL[1] | 7.10 | | | | |
| 3/1/85 | | | | 15,000.00 | | 45,007.69 |
| 3/12/85 | | | | 774.25 | | 44,233.44 |
| 3/20/85 | 9,501.91 | 279.65 | | | 44,233.44 | 54,796.42 |
| | 774.25SL | 7.17 | 10,562.98 | | | |
| 3/26/85 | | | | 20,100.00 | | 34,696.42 |
| 4/19/85 | 9,903.78 | 205.17 | | | 34,696.42 | 45,593.89 |
| | 774.25SL | 14.27 | 10,897.47 | | | |
| 5/6/85 | | | | 5,000.00 | | 40,593.89 |
| 5/13/85 | | | | 5,000.00 | | 35,593.89 |
| 5/20/85 | | | | 5,000.00 | | 30,593.89 |
| 5/20/85 | 11,393.98 | 203.19 | | | 30,593.89 | 42,986.75 |
| | 744.25SL | 21.44 | 12,392.86 | | | |
| 5/22/85 | 720.60 | | | | 42,986.75 | 43,758.96 |
| | 51.61SL | | 772.21 | | | |

(J–1).

---

1. These figures refer to the account for streetlighting provided to the debtor. (Tr. at 45).

The Trustee seeks by his counsel to avoid the following payments made by the debtor to PSE & G:

| Check No. | Date Issued | Date Received | Amount |
|---|---|---|---|
| 1785 | 2/20/85 | 3/1/85 | $15,000.00 |
| 1365 | 4/30/85 | 5/6/85 | 5,000.00 |
| 1368 | 5/10/85 | 5/13/85 | 5,000.00 |
| 1382 | 5/17/85 | 5/20/85 | 5,000.00 |

(P–41, P–42, P–43, P–44).

Check No. 1785 was drawn on debtor's "tax account" at First Peoples Bank of New Jersey, and the other three checks were each drawn on the debtor's "trust account" at the same bank.

On or about July 8, 1985, PSE & G filed a proof of claim in this court for $43,756.96 which represented unpaid bills for utility services supplied to Jolly "N" for the time period from January 18, 1985 through May 22, 1985. PSE & G also filed an administrative proof of claim for $958.12 which represented the amount owed for utility services received post-petition.

█ The determination as to whether a transfer is an avoidable preference is a two-step process. First, the Trustee has the burden of establishing the five elements making up a prima facie case of a preference. 11 U.S.C. § 547(g); *In re J.P. Fyfe, Inc. of Florida*, 891 F.2d 66 (3d Cir. 1989); *In re Fonda Group, Inc.*, 108 B.R. 956, 958 (Bkrtcy.D.N.J.1989). Once the subject transfer has been shown to be a preference, the burden shifts to the transferee to prove by a preponderance of the evidence that the transfer is excepted from the preference rule. 11 U.S.C. § 547(g); *J.P. Fyfe, supra*, 891 F.2d at 69; *Fonda Group, supra*, 108 B.R. at 958.

The defendant PSE & G denied that the four transfers at issue are preferences. Further, PSE & G asserts that if the transfers are deemed preferential transfers, the transfers fall into one or more of the "statutory safe harbors" of § 547(c), namely the "contemporaneous exchange for new val-ue" exception (§ 547(c)(1)); the "ordinary course of business" exception (§ 547(c)(2)); or the "subsequent advance" exception (§ 547(c)(4)). Here, PSE & G asserts that the amount of new value provided to the debtor after the alleged preferential payments were made was $32,207.28 and the post-petition bills were $958.12, or a total of $33,165.40, which should be set off against the $30,000.00 in alleged preferential payments. Alternatively, PSE & G asserts that it would be entitled to set off both unpaid pre-petition bills in the amount of $43,756.96 and unpaid post-petition bills in the amount of $958.32 or a total set off of $44,715.28. The court will address the issue of whether the four transfers constituted preferences and the defendant's affirmative defenses thereto seriatim.

### A. Elements of a Preference Under § 547(b).

The Bankruptcy Code provides at § 547(b):

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provision of this title.

11 U.S.C. § 547(b).

■ The court is satisfied that the Trustee established, by a preponderance of the evidence, each of the statutory elements of a preference for the four transfers at issue. There is no question that the payments were made by Jolly "N" and were transfers of an interest of the debtor in property to or for the benefit of PSE & G. The record establishes that the utility bills received by Jolly "N" were for services which had been previously consumed, and did not include any charges for future services, thus satisfying the requirement that the debt be antecedent. For utility services, courts have held that the debt is incurred at the time the resource is consumed. *In re Emerald Oil Co.*, 695 F.2d 833 (5th Cir.1983); *Barash v. Public Finance Corp.*, 658 F.2d 504 (7th Cir.1981); *In re Naudain, Inc.*, 32 B.R. 871, 873 (Bkrtcy.E.D.Pa.1983). *Cf. Matter of Georgia Steel, Inc.*, 38 B.R. 829, 835 (Bkrtcy.M. D.Ga.1984) (debt incurred on date meter is read); *In re Thomas W. Garland, Inc.*, 19 B.R. 920, 927–928 (Bkrtcy.E.D.Mo.1982) (same) *In re Keydata Corp.*, 37 B.R. 324, 327 (Bkrtcy.D.Mass.1983) (same). The court also finds that the transfers were made while the debtor was insolvent. 11 U.S.C. § 547(f). The defendant produced no evidence to rebut the presumption of insolvency during the 90 days preceding the filing of the debtor's petition in bankruptcy.

■ Although the defendant has not raised the issue, the court will briefly address, in the interest of completeness, the question of whether the debtor's $15,000.00 payment by check dated February 20, 1985 should be deemed to fall within the preference period. Here the check was issued by the debtor on February 20, 1985 and honored by the drawee bank on February 22, 1985. The parties stipulated that the preference period commenced on February 21, 1985. Courts confronted with the question are by no means in agreement as to whether a check is "transferred" for purposes of § 547(b)(4) on the date it is issued by the debtor, the date it is received by the transferee, or on the date it is honored by the debtor's bank. The majority of courts, including those in this Circuit faced with the issue, hold that the date that the check is honored by the debtor's bank is the operative date for § 547(b)(4) purposes. *In re Video East, Inc.*, 33 B.R. 61, 63 (Bkrtcy.E. D.Pa.1983); *In re Ardmore Sales Co., Inc.*, 22 B.R. 911, 913 (Bkrtcy.E.D.Pa.1982).[2] The date that a preferential transfer occurs is a federal question, but one which must be decided by reference to state law. *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 65 S.Ct. 405, 89 L.Ed. 305 (1944). In *McKenzie*, the Supreme Court noted, "what constitutes a transfer and when it is complete ... is necessarily a federal question...." 323 U.S. at 369–70, 65 S.Ct. at 407–8. Nevertheless, the court concluded, "the state standards which control the effectiveness of a transfer likewise determine the precise time when a transfer is deemed to have been made or perfected." *Id.* at 370, 65 S.Ct. at 408. Under New Jersey's version of the Uniform Commercial Code, a check does not operate as an assignment of funds until accepted by the drawee bank. N.J.S.A. 12A:3–409(1). This

**2.** Several courts have held that the date of delivery of the check by the debtor controls on the question of whether a transfer is made within or without the 90 day preference period. *In re Wolf & Vine*, 825 F.2d 197, 200–202 (9th Cir. 1987); *In re J.I.C. Installations, Inc.*, 109 B.R. 43, 46–47 (Bkrtcy.S.D.N.Y.1989); *Matter of Global International Airways Corp.*, 80 B.R. 990, 994 (Bkrtcy.W.D.Mo.1987); *In re Amarex, Inc.*, 74 B.R. 378, 382 (Bkrtcy.W.D.Okla.1987), *aff'd*, 88 B.R. 362 (W.D.Okla.1988). Other courts have held that the date of transfer is the date that the transferee received the check. *In re Keydata Corp., supra*, 37 B.R. at 328.

court finds the majority view persuasive. *See also In re New York City Shoes, Inc.,* 880 F.2d 679, 681 n. 2 (3d Cir.1989). Check No. 1785 was therefore transferred for § 547(b) purposes on February 22, 1985, within the 90 day preference period. Accordingly, all four subject transfers fall within the 90 day preference period.

 The final element that the Trustee had the burden of establishing is that PSE & G, on account of the four subject transfers, received more than it would have were the case one under Chapter 7 of the Bankruptcy Code. The only evidence presented at trial concerning this element is the following testimony by the Trustee:

BY MS. CAROL A. SLOCUM (Attorney for the Trustee):

Q: Rabbi Kellman, based on your review of the claims register, could you indicate to the court the approximate amount of the unsecured claims in this bankruptcy proceeding?

A: About $2 million.

Q: Rabbi Kellman, could you indicate to the court the amount of funds you have available in the estate for distribution to creditors?

\* \* \* \* \* \*

A: Approximately $90,000.00.

\* \* \* \* \* \*

Q: Rabbi Kellman, could you indicate to the court, do you have an estimate of what unsecured creditors will receive?

A: Just a partial amount; very, very small amount.

Q: Do you anticipate the distribution to be—

A: I don't anticipate too much more revenue into the estate, and the estate owes about $2 million.

(Tr. at 27–30).

The standard for determining whether a creditor received more, as a result of alleged preferential transfers, than it would have received under a Chapter 7 distribution is whether the general unsecured creditors would receive less than 100% recovery on their claims. *In re Meinhardt Mechanical Service, Inc.,* 72 B.R. 548, 550 (Bkrtcy. W.D.Pa.1987). The court thus finds that the Trustee's testimony was sufficient to establish the fifth and final element of § 547(b).

Being satisfied that the Trustee has established that the four subject transfers were, indeed, preferences, the court now must ascertain the applicability and extent of PSE & G's affirmative defenses to the avoidance of the transfers.

*B. The Contemporaneous Exchange for New Value Defense Under § 547(c)(1).*

 PSE & G's first affirmative defense is that the subject transfers constituted contemporaneous exchanges for new value and were therefore excepted from avoidance by § 547(c)(1). As with all other defenses under § 547(c), the creditor bears the burden of proving, by a preponderance of the evidence, the non-avoidability of the transfers in issue. 11 U.S.C. § 547(g).

Section 547(c)(1) provides that:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange.

The defendant argues that due to the "unique" nature of the utility industry, in which utility services are supplied to a customer and then billed at the end of the billing cycle after the meters are read, a customer's payment of a bill for service supplied in a previous billing cycle is contemporaneous for purposes of § 547(c)(1)(B). Defendant further argues that the "new value" requirement of § 547(c)(1)(A) is satisfied by PSE & G's continuance of utility services to the debtor during the next billing cycle in exchange for payment of the current (or former) bill.

 Neither the Bankruptcy Code or the case law interpreting the relevant Code sections supports PSE & G's position. To fall within the contemporaneous exchange exception, both parties must intend, at the

outset, that the exchange be contemporaneous. *In re Keydata Corp., supra,* 37 B.R. at 327; *In re Naudain, supra,* 32 B.R. at 873–874; 4 *Collier on Bankruptcy* ¶ 547.37 at 547–118 (15th ed.1983). The Code defines "new value" as "money or money's worth in goods, services, or new credit, ... but does not include an obligation substituted for an existing obligation." 11 U.S.C. § 547(a)(2).

■ For the same reasons that this Court found that the transfers were on account of an antecedent debt for purposes of § 547(b), the Court must find that the transfers were not "contemporaneous exchanges" for purposes of § 547(c)(1). Far from having satisfied its burden of proof to the contrary, PSE & G's own pleadings and the entirety of the evidence before this Court establish that the transactions in question were purely credit transactions. The course of dealing between the parties reveals that the debtor consumed the utility services provided, was billed at the end of a monthly billing cycle therefor, and then at some later date paid for the services previously provided. There was no contemporaneous exchange present in the four subject transfers. *See In re Naudain, Inc., supra,* 32 B.R. at 873.

■ The Court is also unconvinced that the continued provision of utility services constitutes "new value" for purposes of § 547(c)(1). In the case of *In re Keydata Corp., supra,* the defendant utility company unsuccessfully made the same argument that PSE & G advances here. 32 B.R. at 327. In rejecting the argument that "new value" is present where a utility company predicates the supply of future services on the payment of past-due bills, the court in *Keydata* stated that:

[r]eplenishment of a line of credit on an open account in response to a receipt of payment is not a contemporaneous exchange for new value because the payment was intended to satisfy a previous debt and substitution of credit in response to a payment is an existing obli-

gation. 37 B.R. at 327. (citation omitted).

*Id.*

For these reasons, PSE & G's contemporaneous exchange defense must fail.

### C. The Ordinary Course of Business Defense Under § 547(c)(2).

The second defense raised by PSE & G is that the transfers at issue are excepted from avoidance by the Trustee as being made in the ordinary course of business under § 547(c)(2). As with the contemporaneous exchange defense, the transferee has the burden of proving, by a preponderance of the evidence, the non-avoidability of a transfer under subsection (c)(2). 11 U.S.C. § 547(g). Section (c)(2) provides:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms.

The legislative history of § 547(c)(2) indicates that this defense was intended to "[P]rotect recurring, customary credit transactions which are incurred and paid in the ordinary course of business of the debtor and the transferee", H.R.Rep. No. 95–595, 95th Cong., 1st Sess., 373–374 (1977), *reprinted in* U.S.Code Cong. and Admin. News 1978, pp. 5787, 6329, 6330, and to "leave undisturbed normal financial relations, because [such an exception] does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditor during the debtor's slide into bankruptcy." *Id.*

Because of the conjuctive nature of the statute the defendant must prove each of the three elements of § 547(c)(2). *Matter of J.P. Fyfe, Inc. of Florida, supra,* 891 F.2d at 69. There is no dispute that Jolly "N" incurred the utility charges at issue here in the ordinary course of its business.

This leaves for the Court's determination the questions of whether the payments were made in the ordinary course of business between Jolly "N" and PSE & G and whether they were made according to ordinary business terms.

▪ The terms "ordinary course of business" and "ordinary business terms" are not defined by the Bankruptcy Code. In order to make a determination whether the transfers were made "in the ordinary course of business" between Jolly "N" and PSE & G, the court must view the transactions from a subjective perspective, taking into account such factors as: (1) the length of time the parties have engaged in the type of dealing at issue; (2) whether the subject transfer was in an amount more than usually paid; (3) whether the payments were tendered in a manner different from previous payments; (4) whether there appears any unusual action by either the debtor or creditor to collect or pay on the debt; and (5) whether the creditor did anything to gain an advantage in light of the debtor's deteriorating financial condition. *In re Richardson*, 94 B.R. 56, 60 (Bkrtcy.E. D.Pa.1988). *See also Matter of J.P. Fyfe, Inc. of Florida*, 96 B.R. 474, 476–77 (D.N.J. 1988), *aff'd*, 891 F.2d 66 (3d Cir.1989). The Court must examine the subject transfers between Jolly "N" and PSE & G "as though that relation[ship] were in a vacuum" for purposes of § 547(c)(2)(B). *J.P. Fyfe, supra*, 96 B.R. at 476; *In re Magic Circle Energy Corp.*, 64 B.R. 269, 272 (Bkrtcy.W.D.Okla.1986).

▪ For purposes of § 547(c)(2)(C), the Court must use an objective, industry-wide perspective to determine whether the alleged preferential payments were made according to ordinary business terms. *In re Richardson, supra*, 94 B.R. at 60 (court uses same factors as are used in § 547(c)(2)(B) analysis, but in context of normative industry-wide practices); *Magic Circle, supra*, 64 B.R. at 275 (to be objectively "ordinary", transfer may not deviate from the industry norm). Thus, in order to successfully defend against this avoidance action PSE & G must meet its burden of proof as to both tests: ordinariness of the subject transfers with regard to this particular debtor, and the ordinariness of the transfers in the context of utility industry practice. *See Richardson* at 60.

▪ Here, PSE & G failed to meet these burdens. The paucity of evidence presented by PSE & G on this defense failed to establish the ordinariness of the transactions as between PSE & G and Jolly "N" and their ordinariness in the context of utility industry practice. Counsel for PSE & G in his brief to the Court and at trial argued that the debtor's payments to PSE & G during the 90 day preference period followed the same pattern as made during the several months preceeding the filing of the bankruptcy petition. (Tr. at 56–57). PSE & G relies upon the following billings and payments on and after November 28, 1984 as follows:

| Date | Billing + | Late Pmt. Charges = | Monthly Total | Payment | Previous Balance | Total |
|---|---|---|---|---|---|---|
| 11/28/84 | | | | 10,000.00 | | 63,882.11 |
| 12/7/84 | | | | 10,000.00 | | 53,882.11 |
| 12/18/84 | 11,449.22 774.25SL | 394.34 | 12,617.81 | | 53,882.11 | 66,499.92 |
| 12/21/84 | | | | 10,000.00 | | 56,499.92 |
| 12/28/84 | | | | 10,000.00 | | 46,499.92 |
| 1/18/85 | 10,512.65 774.25SL | 300.96 7.04 | 11,594.90 | | 46,499.92 | 59,094.82 |
| 1/23/84 | | | | 10,000.00 | | 48,094.82 |
| 2/13/85 | | | | 774.25 | | 47,320.57 |

(J–1). The evidence concerning the parties' course of dealing can be found in Exhibit J–1 which represents Jolly "N" 's account history with PSE & G from May 18, 1984 through May 22, 1985, the date Jolly "N" filed its petition. Of the seventeen payments made by Jolly "N" to PSE & G prior to the commencement of the preference period (including the re-submission of three presumably NSF returned checks), only five were lump sum payments in round figures. Between November 28, 1984 and January 23, 1985, Jolly "N" made five payments to PSE & G in the amount of $10,-000.00 each. No evidence was produced as to the source, method, and the manner in which these payments were made. Similarly, no evidence was produced as to whether these lump sum payments were made in accordance with any arrangement between the parties, rather the only evidence adduced was that the Trustee was not familiar with the terms of or existence of any such agreement between the parties. The Trustee's knowledge or lack of knowledge as to the terms of the parties' prior course of business is irrelevant however, as the defendant has the burden of affirmatively establishing the terms and arrangements between the parties so that the Court may determine whether the transfers at issue conformed to the parties' "ordinary" course of business. 11 U.S.C. § 547(g).

Finally, even if PSE & G had established that lump sum payments were the "usual" method of payment between the parties, which it did not, the payments at issue were substantially different from the previous lump sum payments made. Whereas Jolly "N" had made $10,000.00 lump sum payments prior to the onset of the preference period, the transfers subject to avoidance were for one $15,000.00 and three $5,000.00 payments. The defendant also did not, produce any evidence that lump sum payments are a usual practice in the utility industry.

For the reasons given above, the Court finds that the defendant has failed to meet its burden of establishing that the alleged preferential payments were made in the "ordinary course of business" between the parties, and that the payments were made according to "ordinary business terms". Although the Court is mindful of the fact that in certain situations the parties may adopt a practice of payment which becomes the ordinary course of business between them, there was no evidence of a lengthy or established course of conduct between Jolly "N" and PSE & G presented that would render the contested lump sum transfers "ordinary." *See J.P. Fyfe, supra,* 96 B.R. at 477; *Richardson, supra,* 94 B.R. at 61.

### D. The Subsequent Advance Defense Under § 547(c)(4).

PSE & G also argues that it is entitled to setoff against the alleged preferential transfers an amount equivalent to the value of utility services provided to Jolly "N" between the date the payments were made and the date that Jolly "N" 's bankruptcy petition was filed. PSE & G also contends that it may offset the unpaid charges incurred by Jolly "N" post-petition. The Court will consider the claim for setoff as made pursuant to 11 U.S.C. § 547(c)(4), commonly known as the "subsequent advance" defense.

Subsection 547(c)(4) states:

(c) The trustee may not avoid under this section a transfer—

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

Again, the burden is on the transferee to establish the applicability of the exception to the avoidance. 11 U.S.C. § 547(g). The three requirements of § 547(c)(4) are well established. First, the creditor must have received a transfer that is otherwise voidable as a preference under § 547(b). Second, *after* receiving the preferential transfer, the preferred creditor must advance "new value" to the debtor on an unsecured basis. Third, the debtor must not have fully compensated the credi-

tor for the "new value" as of the date that it filed its bankruptcy petition. If a creditor satisfies these elements, it is entitled to set off the amount of the "new value" which remains unpaid on the date of the petition against the amount which the creditor is required to return to the trustee on account of the preferential transfer it received. *In re New York City Shoes, Inc.,* 880 F.2d 679, 680 (3d Cir.1989); *In re American International Airways, Inc.,* 56 B.R. 551 (Bkrtcy.E.D.Pa.1986). The purpose of subsection (c)(4) is to encourage trade creditors to continue dealing with troubled businesses. *American International Airways, supra,* 56 B.R. at 553; *In re Gold Coast Seed Co.,* 30 B.R. 551, 553 (9th Cir. BAP 1983).

▇▇ In the case *sub judice,* defendant PSE & G urges the Court to apply the so-called "net result rule" in which all advances and transfers within the preference period are netted against each other to determine the amount to be allowed as an offset. Section 547(c)(4) did not codify the "net result rule." Instead, § 547(c)(4) is more appropriately called the "subsequent advance rule." *In re Ford,* 98 B.R. 669, 675–679 (Bkrtcy.D.Vt.1989) (excellent discussion regarding history of (c)(4) caselaw); *Matter of Georgia Steel, Inc.,* 38 B.R. at 838; *In re Keydata Corp.,* 37 B.R. at 328; *In re Thomas W. Garland, Inc.,* 19 B.R. at 925.

The court in *In re Rustia,* 20 B.R. 131, 135 (Bankr.S.D.N.Y.1982) explained the distinction between the "subsequent advance"

rule and the former "net result" rule in ascertaining new value:

> Thus, only preferential transfers made by the debtor before the new value was given may be netted out against the subsequent new value. However, preferential payments following receipt of new value are not netted against the new value. Thus, the net result rule does not apply to the 90 day preference period as a whole; each transfer must be examined independently to determine whether or not the creditor later replenished the estate.

*In re Rustia,* 20 B.R. at 135, *cited in In re Ford,* 98 B.R. 669, 681–682 (Bankr.D.Vt. 1989).

At least one court has expressly rejected an interpretation of § 547(c)(4) which would allow set off only of new value provided immediately after one preferential payment and prior to the next preferential payment as placing limitations on the creditor's right to set off not found in the statute. *See In re Thomas W. Garland, Inc.,* 19 B.R. 920, 926 (Bankr.E.D.Mo.1982).[3]

▇▇ At the outset of any § 547(c)(4) analysis the date of the transfer must be established so that the advances occurring subsequent to the date of transfer may be ascertained. Courts have held that for purposes of subsection (c)(4) that date is the date that the transferee receives the preferential payment; i.e. upon receipt of the check. *Matter of Georgia Steel, Inc., supra,* 38 B.R. at 837; *In re Gold Coast Seed Co., supra,* 30 B.R. at 553.[4]

---

**3.** For a similar application of § 547(c)(4) see *Matter of Georgia Steel, Inc.,* 38 B.R. 829 (Bankr. M.D.Ga.1984).

**4.** The conclusion that a transfer occurs on the date of receipt by the transferee for (c)(4) purposes is not inconsistent with the conclusion that a transfer occurs on the date that a check is honored by the drawee's bank for § 547(b) purposes. Section 547(c)(4)'s purpose of encouraging creditors to continue dealing with troubled business is best effected by a holding that a transfer occurs on the date of receipt rather than forcing creditors to wait until a check clears the debtor's bank before extending new credit. On the other hand, the possibility that a check may be dishonored by the drawee's bank mandates a holding that for § 547(b) purposes the date of transfer is the date the check clears the bank for that is the date the transfer is

perfected thus giving certainty to the determination of whether the transfer was concluded within or without the preference period. *In re J.I.C. Installations Inc.,* 109 B.R. 43, 45–47 (Bankr.S.D.N.Y.1989); *Matter of Georgia Steel, Inc., supra,* 38 B.R. at 834; *Gold Coast Seed, supra,* 30 B.R. at 553. The Third Circuit in *In re New York City Shoes, Inc.,* 880 F.2d 679 (3d Cir.1989) held that for purposes of post-dated checks, there is a presumption that the transfer date for purposes of § 547(c)(4) is either the date on the face of the check or the date the check clears the bank as opposed to the date on which the check was delivered. This presumption can be rebutted if the creditor can demonstrate that the parties treated the transaction as though it were a cash transaction and if the creditor rebuts the presumption the date of transfer should be considered the date that the debtor delivered the check to the creditor. 880

<br><br>

■ The Court here will use the payment date entered on PSE & G's itemized account statement. (J–1).

Turning to the facts at hand, the Court finds that PSE & G is entitled to a set-off of new value in the amount of $15,772.21. This amount is calculated as follows:

■ 1. For the period from February 21, 1985 (the commencement of the preference period) through March 1, 1985 (the date that Jolly "N" 's first preferential payment was received), PSE & G is not entitled to any setoff for utility services rendered because such services were rendered prior to any preferential payments and thus cannot be considered "subsequent advances."

■ 2. For the period from March 2, 1985 to March 20, 1985, PSE & G is entitled to no setoff because it failed to introduce any evidence of the amount of the $10,562.98 utility bill of March 20, 1985 that is attributable to the period dating from the receipt of Jolly "N" 's $15,000.00 payment of March 1, 1985. Since no proof has been offered as to the actual value of services supplied to the debtor after the preferential transfer, but before the next billing period, the Court must conclude that PSE & G has not sustained its burden of proof. *See Matter of Georgia Steel, supra,* 38 B.R. at 838.

■ 3. PSE & G is entitled to set-off the entire amount of the April 19, 1985 bill of $10,897.47 for the period March 20, 1985 through April 19, 1985 against the debtor's payment of $15,000.00 on March 1, 1985 because the amount was advanced after the receipt of Jolly "N" 's preferential payment of March 1, 1985, was unsecured and remained unpaid as of the date of the bankruptcy petition. The payment of $15,000.00 by the debtor on March 1, 1985 may also be netted against the subsequent bill of May 20, 1989 in the amount of $12,392.86. This amount was advanced after the receipt of the debtor's preferential payment of $15,000.00 on March 1, 1985, was unsecured and remained unpaid as of

the date of the filing of the bankruptcy petition. As a result, the March 1, 1985 $15,000.00 payment will be entirely insulated from attack as a preferential payment. With regard to the payments of $5,000.00 each made on May 6, 1985 and May 13, 1985 and May 20, 1985, while PSE & G billed the debtor on May 20, 1985 in the amount of $12,392.86 for the period from April 19, 1985 to May 20, 1985, PSE & G is entitled to no set off of this amount because it failed to introduce any evidence of the portion of the May 20, 1985 bill in the amount of $12,392.86 that was supplied after these preferential payments.

4. For the period from May 20, 1985 to May 22, 1985, PSE & G is entitled to setoff the entire value of utility services provided for that period of $772.21 because service was provided after receipt of the preferential payments of May 6, 1985, May 13, 1985 and May 20, 1985, of $5,000.00 each, was unsecured, and remained unpaid on the date Jolly "N" filed its bankruptcy petition.

PSE & G's entire offset amounts to $15,772.21. The Trustee is therefore entitled to recover from PSE & G for the benefit of the estate of Jolly "N" the sum of $14,227.79 as an avoidable preference under 11 U.S.C. § 547(b), for which the defendant is not entitled to any exception under 11 U.S.C. § 547(c).

■ As for PSE & G's claim that it is entitled to an offset in the amount of the value of services provided post-petition, that claim is hereby rejected. Post-petition advances of new value may not be applied to offset preferential transfers. *In re Ford, supra,* 98 B.R. at 682–683; *In re Bellanca Aircraft Corp.,* 850 F.2d 1275, 1284 (8th Cir.1988). To allow a creditor to offset post-petition advances against preferential transfers would be contrary to other provisions of the Code dealing with post-petition advances, would possibly prejudice the interests of other creditors, and would "ignore the orderly mechanisms estab-

F.2d at 679. The *New York City Shoes* court expressed no opinion on the date of transfer of currently dated checks. 880 F.2d at 683. Because the checks at issue in the case *sub judice* were not postdated, the Court is not bound by

*New York City Shoes* and follows the majority view that for § 547(c)(4) purposes, the date of transfer of a currently dated check is the date the check is delivered to the creditor. *See New York City Shoes, supra,* 880 F.2d at 683.

**910**

lished by Congress to protect all interested parties concerned." *Bellanca, supra,* 850 F.2d at 1284–1285. Moreover, there is a lack of mutuality for such offsets because post-petition advances are made to the debtor's estate, and not to the debtor. *Id.*

Accordingly, the Trustee is entitled to recover from PSE & G for the benefit of the debtor estate the sum of $14,227.79 as an avoidable preference under § 547(b) for which the defendant is not entitled to any exception under § 547(c).

The Court hereby further orders that PSE & G remit, pursuant to 28 U.S.C. § 1961(a), to the Trustee prejudgment interest at the Federal Post–Judgment Interest Rate applicable as of November 21, 1988, that date being the date that the Trustee first demanded the return of the preferential payments to compensate the estate for the use of these funds. (*See* Trustee's Complaint, ¶ 8, PSE & G's Answer To Complaint, ¶ 3). *In re Bob Grissett Golf Shoppes, Inc.,* 78 B.R. 787, 792 (Bkrtcy.E.D.Pa.1987). Each party shall bear its own costs.