**In the Matter of MIDWAY AIRLINES, INCORPORATED, Debtor.**

**Appeal of JENSEN CABINET, INCORPORATED.**

**No. 95–1783.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 13, 1995.

Decided Nov. 2, 1995.

Richard G. Smolev, Gary S. Caplan (argued), John Moynihan, Sachnoff & Weaver, Chicago, IL, for Plaintiff–Appellee.

Ward W. Miller (argued), Bloom, Bloom, More & Miller, Fort Wayne, IN, for Appellant.

Before COFFEY, EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Jensen Cabinet, Inc., a creditor of Midway Airlines, seeks review of a determination by the bankruptcy court, subsequently affirmed by the district court, that certain of Midway's invoice payments to it were preferential transfers. The bankruptcy court took the view that, under our decision in *In re Tolona Pizza Products Corp.*, 3 F.3d 1029 (7th Cir. 1993), Jensen had not established that the payments were within the "ordinary course of business" exception to the trustee's power of avoidance. Because the court was correct in its determination, the judgment under review is affirmed.

I

BACKGROUND

A. *Facts*

Jensen Cabinet, Incorporated ("Jensen") received six invoice payments from Midway Airlines, Incorporated ("Midway") within ninety days prior to Midway's bankruptcy filing in March 1991. Midway's trustee in bankruptcy filed this action under 11 U.S.C. § 547 to have these payments set aside as

preferential transfers.[1] Jensen took the position that these payments fell within the "ordinary course of business" exception to the trustee's avoidance power found in 11 U.S.C. § 547(c)(2):

> (c) The trustee may not avoid under this section a transfer—
>
>    \*     \*     \*     \*     \*     \*
>
> (2) to the extent that such transfer was—
>
> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>
> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>
> (C) made according to ordinary business terms[.]

11 U.S.C. § 547(c)(2). Prior to trial, the parties stipulated that Jensen had satisfied subsections 547(c)(2)(A) and (B). The sole issue at trial, therefore, was whether the contested payments to Jensen had been made in accordance with "ordinary business terms" as required by subsection 547(c)(2)(C).

The evidence at trial showed that Jensen, a maker of custom cabinetry, sells its millwork primarily to airlines.[2] The company's president, Dennis Jensen, gave testimony concerning Jensen's invoice terms and debt collection practices. He testified that, although Jensen's invoice terms were "net ten days" with one and one-half percent interest charged on past due balances, the company never had received payment from any of its airline customers within ten days and never had charged interest. On cross-examination, Mr. Jensen admitted that he had no personal knowledge of his competitors' credit practices.

Jensen submitted an exhibit showing the timing of payments received from its customers, including other airlines. The exhibit indicated that the timing of Midway's payments was no different than those made by Jensen's other customers and that the timing of Midway's payments was no different during the ninety-day preference period than before.

Finally, Jensen offered the testimony of a former project manager for Midway, Emmit Ingram. Mr. Ingram, who had worked for two other airlines before coming to Midway, attempted to describe to the court how these other airlines dealt with firms providing airline millwork. The bankruptcy court, however, sustained the trustee's relevancy objection to this testimony on the ground that Mr. Ingram's knowledge of these airlines' practices predated the preference period by almost ten years. Mr. Ingram, who left Midway Airlines in 1990, did testify that Midway's payment practices to Jensen were the same as to the airline's other vendors.[3]

### B. Earlier Proceedings

The bankruptcy court held that Jensen had not introduced sufficient evidence of "ordinary business terms" under section 547(c)(2)(C). Relying on *In re Tolona Pizza Products Corp.*, 3 F.3d 1029 (7th Cir.1993), the bankruptcy court held that Jensen had failed to offer evidence of its competitors' credit practices and therefore entered judgment for Midway's trustee. In summarizing the deficiency that it saw in Jensen's case, the court said:

> [Section 547(c)(2)(C)] goes outside the relationship of the parties. It requires, as the majority opinion [in *Tolona Pizza*] clearly indicates, that the creditor has to show that the practices in which its competitors engage are—what the range of those are. And that's where Mr. Caplan's

---

1. When, within ninety days before declaring bankruptcy, the debtor makes a payment to an unsecured creditor, the payment is considered a "preference." Subject to certain exceptions, including the one at issue here, the trustee in bankruptcy can recover such a payment and thus force the creditor to take its chances with the rest of the debtor's unsecured creditors. *See* 11 U.S.C. § 547.

2. Jensen's products include custom counters, podiums, back screens and display cases designed to meet the airlines' ticketing and baggage claim needs.

3. *See infra* note 9.

cross-examination of Mr. Jensen was very telling.

Mr. Jensen candidly admits that even though Tricraft, Bromack, and Fish Company were competitors back in the pre-preference period, he had no personal, first-hand knowledge of their accounting practices, how they dealt with their accounts receivable and the aging thereof, or the situation involving their sales. That is the element of proof which is lacking here to meet the creditor's burden.

Tr. at 73. The bankruptcy court thus granted the trustee's petition to set aside the disputed payments.

The district court affirmed the decision of the bankruptcy court. The court agreed that *Tolona Pizza* requires a creditor to present some evidence of the practices of its competitors in order to establish the "ordinary business terms" of the industry. Jensen, the district court held, focused its proof on the wrong entity. Through Mr. Ingram's testimony and the exhibit it offered at trial, Jensen had shown the "range of practices" in which firms similar to Midway, the *debtor*, engaged. Under *Tolona Pizza*, however, the proper inquiry under section 547(c)(2)(C) focuses on the practices of the *creditor's* competitors. *See In re Tolona Pizza*, 3 F.3d at 1033. Mr. Jensen admitted on cross-examination that he had no knowledge of his competitors' practices, and the company introduced no other evidence of such practices. Because Jensen thus failed to meet its burden of proof under section 547(c)(2)(C), the district court affirmed the decision of the bankruptcy court.

## II

## DISCUSSION

We must determine whether the district court erred in concluding that, because Jensen introduced no direct evidence of sales terms used by similar firms in the industry, it had not met its burden of proof of "ordinary business terms" under 11 U.S.C. § 547(c)(2)(C). "This court exercises de novo review of the district court's and the bankruptcy court's conclusions of law. Findings of fact made by the bankruptcy court are reviewed under a clearly erroneous standard." *In re Chappell*, 984 F.2d 775 (7th Cir.1992) (citations omitted).

### A. *Jensen's Position*

Jensen now contends that, by showing the payment practices of the airline industry, it *did* introduce evidence of its competitors' terms. Because the airlines are uniform in their payment practices to construction suppliers and the suppliers are powerless to alter those terms, Jensen argues, the payment terms of the airline-customers are in fact the payment terms of the cabinetmaker-suppliers. Unlike *Tolona Pizza*, where "the relevant business and financial considerations var[ied] widely among firms on ... the buying and selling side of the market," *In re Tolona Pizza*, 3 F.3d at 1033, the business terms of the millwork industry are uniform and are those dictated by the airlines' payment practices.

The bankruptcy court commented, Jensen continues, on the lack of testimony concerning Jensen competitors' accounting, accounts receivable, and sales policies. These internal practices, Jensen argues, are not "terms" of payment within the meaning of the statute. Moreover, in Jensen's view, the bankruptcy court ruled against it on the erroneous supposition that Jensen was required to produce expert testimony or testimony from its competition. *Tolona Pizza*, Jensen argues, does not require such "outside" testimony; the very purpose of that decision was to simplify, not complicate, the creditor's proof under section 547(c)(2).

Jensen's proof is sufficient, it argues, because the two functions served by section 547(c)(2)(C) are met in this case. First, this subsection serves an evidentiary function: to bolster potentially self-serving testimony by creditors that their own business terms are ordinary. *In re Tolona Pizza*, 3 F.3d at 1032. Because the bankruptcy judge specifically found the testimony of Mr. Jensen and Mr. Ingram to be "credible," section 547(c)(2)(C)'s evidentiary function is already fulfilled in this case. The second function served by this subsection is to prevent favoritism among creditors. *Id.* Mr. Ingram's "credible" testimony that Jensen was treated

no better than any of Midway's other millwork companies, Jensen argues, fulfills this second function as well.

Jensen further argues that the bankruptcy court erred in ruling that the relevant industry included firms selling to non-airline customers.[4] Because less than one percent of Jensen's business is non-airline work, it argues that the bankruptcy court's focus on the non-airline cabinetry business was clear factual error. Finally, Jensen argues that the bankruptcy court erred when it found that Mr. Ingram's testimony was "immaterial" because he had stopped working for Midway in November 1990, prior to the payments in question.[5] Because the trustee had stipulated that there was no change in Midway's payment methods and that most of the disputed payments had been processed before Mr. Ingram left, Jensen contends that this finding of the court was clear error.

## B. *The Trustee's Position*

At the outset, the trustee in bankruptcy defends the bankruptcy court's definition of the relevant industry as "millwork firms doing business with airlines." Because Jensen had some 400–500 competitors for airline and non-airline millwork, the bankruptcy court correctly found that these firms were "similar in some general way" to Jensen. *In re Tolona Pizza,* 3 F.3d at 1033. No matter how the relevant industry is defined, the trustee argues, Jensen failed to offer *any* evidence as to the range of business terms used by that industry.

The trustee contends that Jensen offered no evidence concerning "firms similar in some general way" to Jensen. *Id.* Both Mr. Jensen's testimony and the trial exhibit relate solely to Jensen's experience with its own customers. The Sixth Circuit, it submits, has ruled that such evidence does not, standing alone, satisfy the creditor's burden under section 547(c)(2)(C). *See Logan v. Ba-*

sic Distrib. Corp. (In re Fred Hawes Org., Inc.),* 957 F.2d 239, 245–46 & nn. 6 & 7 (6th Cir.1992). Mr. Ingram's testimony, the trustee further contends, is also unavailing. His testimony concerning other airlines' treatment of cabinet suppliers, based on knowledge which predated the preference period by almost ten years, was properly deemed immaterial by the bankruptcy court. Mr. Ingram's testimony concerning Midway's dealings with other millwork companies, the trustee continues, is also ineffectual: He did not identify the other millwork companies, the period when Midway dealt with them, the number of dealings that took place, or the credit terms involved. Nor, in his testimony, did Mr. Ingram indicate whether Midway had paid in accordance with the invoice terms.

Nothing in the record, the trustee argues, supports Jensen's argument on appeal that the airlines' payment practices are the business terms of Jensen's competitors. The trustee submits that, like the creditor in *Advo–System, Inc. v. Maxway Corp.,* 37 F.3d 1044 (4th Cir.1994), Jensen provided no specifics concerning the range of terms in the industry and thus improperly "characterized the industry norm at too high a level of generality." *Id.* at 1051.

The trustee also points out that neither the district court nor the bankruptcy court required "outside" or expert testimony; testimony based on Mr. Jensen's personal knowledge would have sufficed. *See In re Tolona Pizza,* 3 F.3d at 1033 (personal knowledge of creditor's executive vice-president); *Jones v. United Savings and Loan Assoc. (In re U.S.A. Inns of Eureka Springs, Arkansas, Inc.),* 9 F.3d 680, 685 (8th Cir.1993) (creditor's president). In the absence of such personal knowledge on the part of Mr. Jensen, the business terms used by other millwork firms were readily discoverable from Jensen's competitors directly, from their filings

---

**4.** The district court found Jensen's characterization of the bankruptcy court's ruling on market definition to be "not ... altogether accurate." Mem.Op. at 6 n. 2. Even if the industry were limited to airline custom millwork, the district court found, Jensen did not meet its burden of showing the industry norms for firms similar to it. The result, therefore, would be the same.

**5.** The district court found this determination had no bearing on the proper outcome. Even if Mr. Ingram's testimony were given great weight, the court found, Jensen did not meet its burden of showing the industry norms for firms similar to it.

with the SEC, and from various industry trade groups.

Jensen's argument that the functions of section 547(c)(2)(C) have been satisfied, the trustee contends, contradicts the clear holding of *Tolona Pizza.* Under that decision, subsections 547(c)(2)(A)–(B) and subsection 547(c)(2)(C) impose two distinct requirements. If, as Jensen would have it, proof of subsections (A) and (B) constitutes sufficient proof as to subsection (C), the independent objective requirement of the latter would be destroyed, and one-third of the provision's requirements rendered superfluous.

## C. Analysis

■ "The purpose of the preference statute is to prevent the debtor during his slide toward bankruptcy from trying to stave off the evil day by giving preferential treatment to his most importunate creditors, who may sometimes be those who have been waiting longest to be paid." *In re Tolona Pizza,* 3 F.3d at 1032. The exception carved out by section 547(c)(2), however, is designed to "protect[ ] 'recurring customary credit transactions that are received and paid in the ordinary course of the business of the debtor and the debtor's transferee.' " *Energy Coop., Inc. v. SOCAP Int'l, Ltd.,* 832 F.2d 997, 1004 (7th Cir.1987) (quoting 4 L. King, *Collier on Bankruptcy,* ¶ 547.10, at 547–42 (15th ed., 1987)). In order to fall within this exception, therefore, the creditor must prove,[6] by a preponderance of the evidence, that the transaction was ordinary as between the parties, *see* 11 U.S.C. § 547(c)(2)(A)–(B), and ordinary in the industry examined as a whole, *see* 11 U.S.C. § 547(c)(2)(C).

■ In evaluating the submissions of the parties, we begin with our decision in *Tolona Pizza.* There we held:

"[O]rdinary business terms" refers to the *range* of terms that encompasses the practices in which firms similar in some general way to the creditor engage, and ... only dealings so idiosyncratic as to fall outside that broad range should be deemed ex-

traordinary and therefore outside the scope of subsection C.

*Id.* at 1033 (emphasis in original). We hastened to add, moreover, that "this does not mean that the creditor must establish the existence of some single, uniform set of business terms." *Id.* Instead, to satisfy section 547(c)(2)(C), the creditor need establish only that its own dealings with the debtor are situated "within the outer limits of normal industry practice." *Id.*

We believe that Jensen is quite correct in asserting that section 547(c)(2)(C) does not require the introduction of evidence procured directly from competitors. Nor is it necessary to produce expert witnesses to give testimony concerning industry standards. Although these two sources of proof are certainly available to the creditor, the practices of the industry might also be established in other ways. Indeed, as the trustee points out, the creditor in *Tolona Pizza* introduced evidence of industry sales terms through the testimony of its own executive vice-president, a person with extensive experience in the industry. *See In re Tolona Pizza Prods. Corp.,* No. 92 C 1624, 1992 WL 220720 at *4 (N.D.Ill. Sept. 1, 1992), *aff'd* 3 F.3d 1029 (7th Cir.1993). There, the creditor's vice-president testified, based on his personal experience, that the company's sales terms were consistent with those used by others in the industry. *Id.* On appeal, this testimony was found sufficient to satisfy section 547(c)(2)(C). *See In re Tolona Pizza,* 3 F.3d at 1033.

In the present case, Jensen seeks to satisfy section 547(c)(2)(C) indirectly—by using Jensen's own relationship with Midway and its other customers to prove the existence of a unified industry using unified terms. In light of the destructive effect its approach would have on the scheme embodied in section 547(c)(2), Jensen's failure to cite any authority that would permit this type of indirect proof is surprising. Reliance solely on the experience of the creditor renders ineffectual the important dichotomy between the subjective requirements of 11 U.S.C.

---

6. The statute provides, in relevant part: "For purposes of this section, ... the creditor or party in interest against whom recovery or avoidance

is sought has the burden of proving the nonavoidability of a transfer under [section 547(c) ]." 11 U.S.C. § 547(g).

§547(c)(2)(A)–(B), which can be satisfied through proof of the parties' own dealings, and the objective requirement imposed by 11 U.S.C. § 547(c)(2)(C), which requires reference to some external datum.

The importance of this subjective-objective dichotomy was underscored by our decision in *Tolona Pizza*. As we reasoned in that case, if section 547(c)(2)(C) requires only that the dealings between the debtor and the allegedly favored creditor conform to the norm established by the debtor and creditor before the preference period, the third requirement that the transaction be conducted according to "ordinary business terms" would seemingly add nothing to the first two requirements, which together require that both the debt and payment be within the ordinary course of business of the debtor and the creditor. *In re Tolona Pizza*, 3 F.3d at 1032. Noting our reluctance to "cut out and throw away one-third of an important provision of the Bankruptcy Code," we held that section 547(c)(2)(C) requires proof beyond what is normal between the debtor and the creditor: The creditor must also show that the disputed payment was made according to terms that are ordinary when compared to those employed by other firms in the same industry. *Id.* at 1032–33.

Our colleagues in the other circuits have also recognized the importance of maintaining the subjective-objective scheme of section 547(c)(2). In the cases that have come after *Tolona Pizza*, our sister circuits have emphasized the necessity of fulfilling each of section 547(c)(2)'s requirements separately in order to maintain the carefully crafted check on abuse of the concept of preference. *See Advo–System, Inc. v. Maxway Corp.*, 37 F.3d 1044, 1047–48 (4th Cir.1994); *Fiber–Lite Corp. v. Molded Acoustical Prods., Inc. (In re Molded Acoustical Prods., Inc.)*, 18 F.3d 217, 223–24; *Clark v. Balcor Real Estate Fin., Inc. (In re Meridith Hoffman Partners)*, 12 F.3d 1549, 1553 (10th Cir.1993), *cert. denied*, ––– U.S. ––––, 114 S.Ct. 2677, 129 L.Ed.2d 812 (1994); *Jones v. United Savings and Loan Assoc. (In re U.S.A. Inns of Eureka Springs, Arkansas, Inc.)*, 9 F.3d 680, 684 (8th Cir.1993). To maintain the integrity of section 547(c)(2)(C)'s objective requirement, these courts have required proof beyond solely what is normal between the debtor and the creditor.[7]

This approach is consistent with pre-*Tolona Pizza* cases from other circuits as well. In *Logan v. Basic Distribution Corp. (In re Fred Hawes Org., Inc.)*, 957 F.2d 239 (6th Cir.1991), the creditor argued that "ordinary business terms" ought to be determined according to what is ordinary as between itself and its many subcontractors, rather than the industry as a whole. In rejecting this contention and finding that the creditor had not met its burden under section 547(c)(2)(C), the Sixth Circuit outlined the proper inquiry under that provision:

> [C]ourts do not look only at the manner in which one particular creditor interacted with other similarly situated debtors, but rather analyze whether the particular transaction in question comports with the standard conduct of business within the industry.

*Id.* at 246. The court found that the creditor's evidence of its own dealings with other debtors, although relevant to the inquiry, was insufficient to prove "ordinary business terms" by a preponderance of the evidence. *Id.* at 245–46 & nn. 6–7. We note that the bankruptcy and district courts in our own

---

7. In *In re Molded Acoustical Products, Inc.*, the Third Circuit, using the *Tolona Pizza* definition of "ordinary business terms" as its baseline, adopted a sliding-scale approach to determine which business terms are considered "ordinary": "The more cemented (as measured by duration) the pre-insolvency relationship between the debtor and the creditor, the more the creditor will be allowed to vary its credit terms from the industry norm yet remain within the safe harbor of § 547(c)(2)." *In re Molded Acoustical Prod., Inc.*, 18 F.3d at 225. The court noted that, although this approach may resemble the inquiry under sections 547(c)(2)(A)–(B), its analysis continues to import "substantial independent significance" to the objective requirement of section 547(c)(2)(C). *Id.* at 225–26; *accord Advo–System*, 37 F.3d at 1048–49. Finding that the creditor's only evidence of "ordinary business terms" consisted solely of its own dealings with one other company and that company's wholly-owned subsidiary, the Third Circuit concluded that the creditor was not entitled to the protection of section 547(c)(2). *In re Molded Acoustical Prods., Inc.*, 18 F.3d at 227.

circuit, faced with the task of applying our holding in *Tolona Pizza*, have also focused on direct proof of industry business terms.[8]

■ As these cases make clear, section 547(c)(2)(C) requires objective proof that the disputed payments were "ordinary" in relation to the prevailing standards in the creditor's industry; proof of the parties' own relationship is insufficient. Jensen's attempt to satisfy section 547(c)(2)(C) indirectly—through proof of its relationship with Midway Airlines—must therefore fail.[9]

■ Finally, because Jensen has failed to introduce the kind of evidence necessary to meet its burden under section 547(c)(2), we need not address the issue of market definition. In the absence of any evidence of industry practices, Jensen could not prevail no matter how the industry is defined.[10]

### Conclusion

For the foregoing reasons, we conclude that the bankruptcy court correctly applied our decision in *Tolona Pizza* to the present case. Accordingly, the judgment of the district court is affirmed.

AFFIRMED

8. *Compare Solow v. Hilton Inn of Oak Lawn, Ltd. (In re Midway Airlines)*, No. 91 C 6449, 1995 WL 331053 at *2–3 (N.D.Ill. May 31, 1995) (finding "credible" testimony of debtor's payment practices factually insufficient where witness admitted on cross-examination that she had no personal knowledge regarding the billing practices of her competitors) *with Solow v. Ogletree, Deakins, Nash, Smoak & Stewart (In re Midway Airlines)*, 180 B.R. 1009, 1015–17, (Bankr.N.D.Ill.1995) (finding sufficient proof where creditor's managing partner testified to the range of credit practices used by similar law firms).

9. Jensen's only arguably direct proof of industry terms—Mr. Ingram's testimony concerning Midway's dealings with other vendors—was discounted by the bankruptcy court. The bankruptcy court found that Mr. Ingram was no longer employed by Midway at the time of the preference period and "did not have any first-hand information regarding ... collection experience of Jensen's competitors in the millwork industry." Tr. at 74. On the record before us, we cannot say that this finding was clearly erroneous. As the district court pointed out, even if

that testimony were considered, it would not change the result. The bankruptcy court certainly was entitled to conclude that Midway's practices with its millwork vendors immediately prior to bankruptcy could not, standing alone, establish the industry practice. As the trustee points out, Mr. Ingram's testimony is so vague that it affords no basis for a determination of industry terms.

Mr. Ingram's testimony with regard to other airlines' practices was properly excluded as irrelevant. This testimony was based on practices too remote in time from the preference period to be relevant.

10. In any event, Jensen failed to establish that the relevant market was "airline custom millwork." Although Jensen submitted evidence tending to support its claim that most of its customers were airlines, it did not address, in any meaningful way, the customer bases of its competitors nor the capacity of those competitors to serve other industries. *See In re Tolona Pizza*, 3 F.3d at 1033 ("firms similar in some general way to the creditor").