**In re MARCHFIRST, INC.,
et al, Debtors.**

**Andrew J. Maxwell, Trustee, Plaintiff,**

**v.**

**IDC, Defendant.**

**Bankruptcy No. 01 B 24742.
Adversary No. 03 A 524.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Feb. 5, 2008.

Jaclyn H. Smith, Maxwell & Potts, LLC, Attorneys for Plaintiff.

John S. Delnero, Bell, Boyd & Lloyd, LLC, Chicago, IL, Attorneys for Defendant.

## MEMORANDUM OPINION

JOHN D. SCHWARTZ, Bankruptcy Judge.

This matter comes before the court on the motion filed by defendant, IDC, for summary judgment on its answer and on the cross-motion filed by plaintiff, Andrew Maxwell, as Trustee of the estates of marchFirst, Inc., et al. ("Trustee") for summary judgment on his complaint. The complaint seeks recovery of two payments totaling the sum of $46,111.10 made by marchFirst, Inc. and its subsidiaries and affiliates (collectively, "Debtor") to IDC on the grounds that such payments constituted preferential transfers as such transfers are defined under § 547(b) of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* IDC's answer interposes two affirmative defenses, that the payments were made in the ordinary course of business and that IDC provided new value to the Debtor after the payments were made.

The court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and Fed.R.Bank.P. 7001 *et seq.* This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2), (A)(F) and (O) in which this court is empowered to enter final judgment. Venue is proper in this District pursuant to 28 U.S.C. § 1409(a).

### Findings of Fact

On April 12, 2001 ("Petition Date"), the Debtor commenced its bankruptcy cases in the United States Bankruptcy Court for the District of Delaware ("Delaware Court") by voluntarily filing petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtor moved to convert its cases to cases under Chapter 7 of the Bankruptcy Code and on April 26, 2001, the cases were converted. By order dated July 10, 2001, the Delaware Court transferred the cases to the United States Bankruptcy Court for the Northern District of Illinois. On July 16, 2001, the Trustee was appointed to serve as successor Chapter 7 trustee.

IDC's principal office is located in Framingham, Massachusetts. IDC states in its Statement Pursuant to Local Rule 7056–1A that it is in the high tech research industry. The Trustee objected to this statement because IDC stated in its answers to the Trustee's interrogatories that it is in the online advertising business.

During the 90 days preceding the Petition Date, the Debtor made two transfers

to IDC in the amount of $46,111.10 ("Transfers"). The first transfer was made by Debtor's check no. 3000111, dated March 9, 2001 in the amount of $38,611.10. The check cleared on March 17, 2001. The second transfer was made by Debtor's check no. 7869, dated March 13, 2001 in the amount of $7500. The check cleared on April 6, 2001.

The Transfers were made to or for the benefit of IDC. The Transfers were made to pay antecedent debts owed by the Debtor to IDC. By operation of § 547(f) of the Bankruptcy Code the Debtor is presumed to have been insolvent during the 90 days preceding the Petition Date and the presumption has not been rebutted.

Holders of non-priority general unsecured claims against the Debtor at the time of the Transfers would not have received full payment on account of their claims had the Debtor been a debtor in Chapter 7 at that time and the transfers not been made. Pre-petition general unsecured creditors cannot be reasonably expected to receive full payment of their claims in this case. Had the Transfers not been made, IDC would have held only a non-priority general unsecured claim against the Debtor for the amount of the Transfers.

The Trustee alleges that IDC's invoices required payment net 30 days and that the Transfers were not made until 88 days and 522 days, respectively, after the dates of the invoices. IDC's response to these allegations is that the payment terms were not net 30 days and that the Debtor's payments were due quarterly, 91 days after invoice. It also argues that the Trustee's calculations are incorrect because the check clear date (which the Trustee uses to calculate the time of payment) is irrelevant to the calculation and that the date the check is received by the IDC controls the calculation.

Prior to the 90 day period preceding the Petition Date the Debtor paid the Defendant's invoices between 21 days and 341 days after issuance with an average payment delay of 75 days. Of the 19 payments, only 3 were made in excess of 72 days. The Trustee's papers contain a chart showing the transactions prior to the preference period. That chart is reproduced here:

| Check No. | Check Date | Check Amount | Invoice Number | Invoice Date | Days to Payment |
|---|---|---|---|---|---|
| 11267 | 1/11/1999 | $14,134.50 | 1004679 | 11/30/1998 | 41 |
| 11267 | 1/11/1999 | $14,134.50 | 1004678 | 11/10/1998 | 41 |
| 123925 | 11/12/1999 | $13,500.00 | 499467 | 9/15/1999 | 58 |
| 11635 | 2/3/1999 | $ 5,247.27 | 442874 | 12/16/1998 | 49 |
| 13179 | 5/26/1999 | $10,022.88 | 466244 | 5/1/1999 | 25 |
| 13682 | 6/23/1999 | $ 5,011.44 | 472975 | 5/16/1999 | 38 |
| 100755 | 7/30/1999 | $ 5,011.44 | 479976 | 6/16/1999 | 44 |
| 102034 | 8/24/1999 | $ 5,011.44 | 487480 | 7/21/1999 | 34 |
| 103120 | 9/14/1999 | $ 5,011.44 | 493065 | 8/17/1999 | 28 |
| 105004 | 10/14/1999 | $12,500.00 | 464059 | 3/31/1999 | 197 |
| 106176 | 11/2/1999 | $ 5,011.44 | 499400 | 9/15/1999 | 48 |
| 2003728 | 3/2/2000 | $13,500.00 | 523676 | 12/20/1999 | 72 |
| 2007865 | 5/8/2000 | $13,500.00 | 542882 | 3/17/2000 | 52 |
| 2012262 | 7/24/2000 | $17,900.00 | 493138 | 8/17/1999 | 341 |
| 2012262 | 7/24/2000 | $17,900.00 | 504173 | 9/30/1999 | 297 |
| 25195 | 8/21/2000 | $23,166.67 | 582200 | 7/31/2000 | 21 |

| 25385 | 9/18/2000 | $23,166.67 | 582200 | 7/31/2000 | 49 |
| 6489 | 10/12/2000 | $ 3,657.50 | 590017 | 8/31/2000 | 42 |

Invoice no. 639395 dated March 12, 2001 for $38,611.13 was issued by IDC to the Debtor covering the period between March 1, 2001 and May 31, 2001 ("March 2001 Invoice"). IDC submitted an affidavit of Kenneth Fuller, the Assistant Credit Manager for IDC, stating that "IDC provided services to marchFirst having an invoice cost of $38,611.13 following the receipt of the payments in the complaint by march-First." IDC did not file a proof of claim for the March 2001 Invoice.

## Discussion

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c), applicable to adversary proceedings by Fed.R.Bankr.P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Wade v. Lerner New York, Inc.*, 243 F.3d 319, 321 (7th Cir.2001). A court must view the record in the light most favorable to non-movant, drawing all reasonable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Wade v. Lerner New York, Inc.*, 243 F.3d at 321.

Fed.R.Civ.P. 56(e), also provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere ... denials of the adverse party's pleading, but the adverse party's response

... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." In this case, both the Trustee and the defendant have moved for summary judgment.

### Trustee's *Prima Facie* Case

To obtain judgment, the Trustee must prove a *prima facie* case under Section 547(b) of the Bankruptcy Code, which governs avoidable preferential transfers. The statute requires that the Trustee demonstrate five elements to avoid a transfer: (1) the transfer was to a creditor; (2) for or on account of an antecedent debt owed by the debtor prior to the transfer; (3) made while the debtor was insolvent; (4) on or within 90 days before the Petition Date, and (5) that enables the creditor to receive more than it would receive if the case had already been a case under Chapter 7, the transfer had not been made and the creditor received what it would have received under the Bankruptcy Code. Pursuant to § 547(g) of the Bankruptcy Code, the Trustee has the burden of proving the avoidability of a transfer by a preponderance of the evidence. *See Field v. Lebanon Citizens National Bank (In re Knee)*, 254 B.R. 710, 712 (Bankr.S.D.Ohio 2000).

The Trustee has met his burden to prove his prima facie case under § 547(b) of the Bankruptcy Code. During the 90 days preceding the Petition Date, the Debtor made two transfers to IDC in the amount of $46,111.10 ("Transfers"). The first transfer was made by Debtor's check

1. The Trustee's chart included this footnote: If IDC provided the receipt date for the payment, then it was included in this chart. If the receipt date was not included, the Trustee used the check date, as it is the only date available to the Trustee to determine the delay in payment.

no. 3000111, dated March 9, 2001 in the amount of $38,611.10. The check cleared on March 17, 2001. The second transfer was made by Debtor's check no. 7869, dated March 13, 2001 in the amount of $7500. The check cleared on April 6, 2001.

The Transfers were made to or for the benefit of IDC to pay antecedent debts owed by the Debtor to IDC. By operation of § 547(f) of the Bankruptcy Code the Debtor is presumed to have been insolvent during the 90 days preceding the Petition Date and the presumption has not been rebutted.

Holders of non-priority general unsecured claims against the Debtor at the time of the Transfers would not have received full payment on account of their claims had the Debtor been a debtor in Chapter 7 at that time and the transfers not been made. Pre-petition general unsecured creditors cannot be reasonably expected to receive full payment of their claims in this case. Had the Transfers not been made, IDC would have held only a non-priority general unsecured claim against the Debtor for the amount of the Transfers.

IDC objects to the Trustee's allegations that holders of non-priority general unsecured claims against the Debtor at the time of the Transfers would not have received full payment on account of their claims had the Debtor been a debtor in Chapter 7 at that time and the transfers not been made. IDC argues that the Trustee has failed to prove this element of his case.

 "The standard for determining whether a creditor received more, as a result of alleged preferential transfers, than it would have received under a Chapter 7 distribution is whether the general unsecured creditors would receive less than 100% recovery on their claims." *Kellman v. P.S.E. & G (In re Jolly "N",*

*Inc.),* 122 B.R. 897, 904 (Bankr.D.N.J. 1991). "Generally, so long as the distribution to unsecured creditors in a bankruptcy case is less than 100%, 'any payment on account to an unsecured creditor during the preference period will enable that creditor to receive, for preference-avoidance purposes, more than it would have received in a hypothetical chapter 7 liquidation had the payment not been made.'" *In re Rocor International, Inc.,* 352 B.R. 319, 330 (Bankr.W.D.Okl.2006)(quoting *Jacobs v. Matrix Capital Bank (In re AppOnline.com, Inc.),* 315 B.R. 259, 281 (Bankr.E.D.N.Y.2004)). The trustee's testimony is sufficient to establish this element of a preference cause of action. *See e.g., Clark v. Balcor Real Estate Finance, Inc. (In re Meridith Millard Partners),* 145 B.R. 682 (D.Colo.1992), *aff'd,* 12 F.3d 1549 (10th Cir.1993) and *Kellman,* 122 B.R. 897.

Here, the Trustee submitted an affidavit stating that:

> Based on my personal knowledge of the administrative, priority, and unsecured claims on file in the Debtor's bankruptcy case as of the date of this affidavit, and based on my knowledge of the dollar value of the assets of the estate that have been administered to date and that remain to be administered, I do not anticipate or reasonably expect to be able to make a 100% distribution to creditors having filed pre-petition general unsecured claims in this case.

Without any evidence rebutting the Trustee's affidavit, the court finds for the Trustee on this issue. This was the only contested issue on the Trustee's case. Having resolved it in favor of the Trustee, the court now finds that the Trustee has proved his *prima facie* case. The court now turns to IDC's motion for summary judgment.

**Ordinary Course of Business**

 IDC seeks judgment on its affirmative defenses. First, it alleges that the Transfers were made in the ordinary course of business. 11 U.S.C. § 547(c)(2).[2] The defendant bears the burden of proving this defense by a preponderance of the evidence. *Cassirer v. Herskowitz (In re Schick)*, 234 B.R. 337 (Bankr.S.D.N.Y. 1999). "In order for a creditor to prevail using the ordinary course of business exception to 547(b), the creditor must show that the debt had been incurred in the ordinary course of business of both the debtor and the creditor; that the payment too, had been made and received in the ordinary course of their businesses; that the payment was made according to ordinary business terms." *Matter of Tolona Pizza Products Corp.*, 3 F.3d 1029, 1031 (7th Cir.1993).

 In order to determine whether the payments were made and received in the ordinary course of these parties' business, "the court must make a factual inquiry into the prior dealings between the parties." *Cassirer*, 234 B.R. at 348. *See also Lovett v. St. Johnsbury Trucking*, 931 F.2d 494, 497 (8th Cir.1991) and *In re Fulghum Construction Corp.*, 872 F.2d 739, 743 (6th Cir.1989)("the court must engage in a peculiarly factual analysis"). "[T]he cornerstone of this element of a preference defense is that the creditor need demonstrate some consistency with other business transactions between the debtor and the creditor." *Lovett*, 931 F.2d at 497, (citing *In re Magic Circle Energy Corp.*, 64 B.R. 269, 273 (Bankr.W.D.Okla. 1986)). "The creditor must establish a 'baseline of dealings' to enable the court to compare the payment practices during the preference period with the prior course of dealing." *Cassirer*, 234 B.R. at 348.

 Ordinary business terms refers to a range of payment terms encompassing the practices of firms similar to that creditor. *Tolona Pizza*, 3 F.3d at 1033. It is therefore necessary for a creditor to present some evidence establishing the range of acceptable practices within the industry. *In re Midway Airlines*, 1995 WL 331053 (N.D.Ill.1995) (unpublished opinion). *In re Superior Toy & Mfg. Co., Inc.*, 183 B.R. 826, 836 (Bankr.N.D.Ill.1995). The creditor against whom recovery is sought has the burden of proving the nonavoidability of a transfer under § 547(c). 11 U.S.C. § 547(g).

In *In re Gulf City Seafoods, Inc.*, 296 F.3d 363 (5th Cir.2002), the court laid out a standard for the sufficiency of evidence on this issue. "In our view, for an industry standard to be useful as a rough benchmark, the creditor should provide evidence of credit arrangements of other debtors and creditors in a similar market, preferably both geographic and product." *Id.* at 369. In *Tolona Pizza*, the testimony of an insider of the creditor was the evidence that was found to be sufficient to show what was ordinary course of business in the relevant industry. 3 F.3d at 1033. In *In re Apex Automotive Warehouse*, 245 B.R. 543 (Bankr.N.D.Ill.2000), the court opined that a creditor "must present evidence of the actual practices of its competitors." *Id.* at 550.

Here, IDC has offered evidence that the Transfers were made in the ordinary course of business between the parties. IDC submitted an affidavit made by Kenneth Fuller, the assistant credit manager for IDC. He has been an employee of IDC since January 3, 1989 and the assistant credit manager since May 10, 1994. In his

**2.** The court notes that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 took effect after this case was filed and is therefore inapplicable.

affidavit, Fuller attests to the fact that the parties engaged in business transactions going back to June 1999. He also states that at "no time during the business relationship between IDC and [the Debtor] prior to the filing of bankruptcy of marchFirst, Inc. did IDC make threats or demands for payment from marchFirst, Inc." Such threats or demands would have taken the Transfers clearly out of the ordinary course of business. The law requires a factual inquiry into the prior dealings between the parties; the creditor need demonstrate some consistency with other business transactions between the debtor and the creditor. To this end, the Trustee's papers contain a chart showing the transactions prior to the preference period which the court reproduced above.

■ IDC makes a good argument that its preference period transactions with the Debtor do not vary significantly from its pre-preference period transactions with the Debtor. In both periods, the Debtor's payments were erratic. Prior to the 90 day period preceding the Petition Date the Debtor paid IDC's invoices between 21 days and 341 days after issuance with an average payment delay of 75 days. During the preference period, the Trustee alleges that the Transfers were paid 88 days and 522 days after the date of invoice. The Fuller affidavit supports IDC's allegation that payments were due quarterly and that IDC did not make any threats or demands for payment from the Debtor which would indicate that the Transfers were not made in the ordinary course of business between the parties. The payment made 522 days after the date of invoice raises a red flag, but the court's inquiry on this issue will go no further because IDC has not made even a modest showing on the final prong of the ordinary course of business defense—that the Transfers were ordinary in the industry.

■ The term "ordinary business terms" in the statute refers to a range of payment terms encompassing the practices of firms similar to IDC. To prevail, a creditor must present some evidence establishing the range of actual practices within the creditor's industry. IDC presented no evidence on this question. The Fuller affidavit contains the statement that "IDC provided marchFirst, Inc. with the same or similar terms for payment of invoices that IDC required of its other customers." So that there is no doubt on this point, the proof that is required of IDC is evidence of the actual practices of *its* competitors, not whether IDC gave the same terms to its other customers. "[T]he proper inquiry under § 547(c)(2)(C) focuses on the credit practices of the *creditor's competitors* ... three types of evidence [are] typically used as proof: (1) evidence procured directly from competitors, ... (2) the testimony of expert witnesses concerning industry credit practices, and; (3) the testimony of the transferee's own employees, if any, who have personal knowledge of the credit practices used by competitors. The court [in *In re Midway Airlines, Inc.*, 69 F.3d 792 (7th Cir.1995) ] expressly rejected the transferee's reliance solely on evidence of its own practices." *H.L. Hansen Lumber Co. v. G & H Custom Craft, Inc. (In re H.L. Hansen Lumber Co.)*, 270 B.R. 273 (Bankr.C.D.Ill.2001). Since the burden of proof on this defense is on the defendant, 11 U.S.C. § 547(g), IDC is not entitled to judgment on the defense of ordinary course of business.

## New Value

■ IDC also alleges that it provided new value in the form of services to the Debtor after the Transfers were made and seeks judgment on this defense. For a preferential transfer to be excepted from avoidance under § 547(c)(4) of the Bank-

ruptcy Code: (1) the creditor must have received a transfer which is avoidable as a preference, (2) after receiving the preferential transfer, the creditor must advance unsecured credit, goods or services to the debtor and (3) that additional credit must remain unpaid as of the petition date. *Schwinn Plan Comm. v. AFS Cycle Ltd. (In re Schwinn Bicycle Co.)*, 205 B.R. 557, 568 (Bankr.N.D.Ill.1997), *citing Chaitman v. Paisano Auto. Liquids, Inc.*, 62 B.R. 684, 686 (Bankr.N.D.Ill.1986). "If those three elements are satisfied, the creditor may set off the amounts of the post-preference unsecured credit which remains unpaid as of the petition date against the amounts which the creditor is required to return to the trustee on account of the preferential transfer. * * * [P]ost-petition extensions of unsecured credit are not encompassed by Bankruptcy Code § 547(c)(4) and may not be set off against prior preferential transfers to reduce the creditor's preference exposure." *Id.*[3]

■ Under the subsequent new value defense, a preference defendant "has the burden of establishing that new value was extended, which remains unsecured and unpaid after the preferential transfer." *Id., citing Matter of Prescott*, 805 F.2d 719, 731 (7th Cir.1986); *see Globe Building Materials, Inc. v. The RDI Group*, 325 B.R. 253, 259 (Bankr.N.D.Ind.2005), *aff'd*, 484 F.3d 946 (7th Cir.2007). "New value" is defined in relevant part as "money, or money's worth in goods, services, or new credit ..." 11 U.S.C. § 547(a)(2).

Some proof has been presented on this issue. The March 2001 Invoice was issued by IDC to the Debtor billing the Debtor for services to be performed between March 1, 2001 and May 31, 2001. The March 2001 Invoice requests payment of $38,611.13 for the three months' services. Fuller avers in his affidavit that "IDC provided services to marchFirst having an invoice cost of $38,611.13 following the receipt of the payments in the complaint by marchFirst."

■ Still, the evidence is skimpy. No documentation was presented showing work performed. Neither was there an affidavit of any individual who performed services during the relevant time frame. The court notes that IDC did not file a proof of claim for the unpaid March 2001 Invoice. IDC did not submit sufficient evidence to obtain summary judgment on this defense. Nevertheless, IDC does present enough evidence to raise a triable issue of fact.

Therefore, while the court will grant summary judgment to the Trustee on most of his complaint, summary judgment is denied as to the value of services that may have been performed from April 6, 2001 to the Petition Date. The Petition Date in this case is April 12, 2001. "The general rules regarding the calculation of subsequent new value ... are well-established. For the purpose of the affirmative defenses under § 547(c), when the debtor's payment is made by check, ... the preferential transfer is deemed to occur on the date that the creditor received the debtor's check." *Id.* Here, the second transfer was made by Debtor's check, dated March 13, 2001. The check cleared on April 6, 2001. In spite of its own argument that the controlling date is the date the check was received by the creditor (and the court's agreement with the argument), incredibly IDC has not provided the date the check was received. The court must use the

---

**3.** IDC argues that it is entitled to a new value credit for post-petition services and cites *In re Jartran, Inc.*, 732 F.2d 584 (7th Cir.1984) to support its argument. The issue in *Jartran* was whether a pre-petition contract could receive post-petition priority pursuant to section 503 of the Bankruptcy Code, not the issue in this case.

clear date because it is the only date provided to the court.

In order to determine the value of services provided after the date of the last transfer and prior to the Petition Date, a court must calculate the pro rata value of the services. *See, e.g. Kellman,* 122 B.R. at 908–909. The pro-rata cost of the new value services would be $424.30 per day ($38,611.13 divided by the 91 days covered by the March 2001 Invoice). The sum which remains in contention is $2545.80, which is $424.30 multiplied by the six days between the date of the last transfer and the Petition Date. The Trustee is entitled at this time to the total of the Transfers, $46,111.10, minus $2545.80 of new value, which equals $43,565.30.

## Conclusion

For the reasons set forth above, IDC's motion for summary judgment will be denied. The Trustee's cross-motion for summary judgment will be granted to the extent of the Transfers minus the new value which may have been provided by IDC for the six days between the date of the last transfer and the Petition Date.